Merrimack, Mar. 4, 1947. } No. 3640.

CITIZENS' NATIONAL BANK *v*. MABEL P. MORGAN *& a.*

*Dudley W. Orr* and *Robert H. Reno* (*Mr. Reno* orally), for the plaintiff.

The defendants defaulted.

JOHNSTON, J. The proposed permission for deviation from the terms of the trust is limited to the making of investments. The

necessary power is claimed to be in the Superior Court by virtue of section 4 of chapter 371 of the Revised Laws, which is as follows:

"4. DEVIATION FROM TERMS OF TRUST. In all cases where by reason of a change of circumstances which has occurred, shall occur, or is reasonably foreseeable, subsequent to the creation, heretofore or hereafter, of a trust by any deed, will or other instrument, compliance by the trustee or trustees with the terms of the trust relating to the property or the kinds or classes of property which may be held under the trust, would defeat or substantially impair the accomplishment of the purposes of the trust, the court may, upon the filing by the trustee of a bill in equity for instructions and upon notice to all parties in interest, enter a decree permitting the trustee to deviate from such terms of the trust and directing the trustee, if necessary to carry out the purposes of the trust, to sell all or any part of the property held under the trust and to invest the proceeds of such sale in kinds or classes of property which are lawful investments for trustees of estates. No such decree, after its entry, shall thereafter operate to relieve any trustee of any duty imposed by law relating to the investment of trust funds and the exercise of reasonable care for the preservation thereof. This section shall not be construed to limit or restrict the general equitable jurisdiction of the court over trustees, trusts or trust funds."

For the exercise of this power there are at least two requisites. First, the equity court should find such a change of circumstances that compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust. Secondly, any new investments permitted must be those made lawful by the statute (R. L., c. 363, s. 17) defining investments for trustees.

The testator provided that the trust funds should be invested in at least two good savings banks in the state and the income be paid annually to certain persons equally during their natural lives. The average rate of interest of savings banks and savings departments of trust companies in the state in 1927, when the will was executed, was 4.15%, and in 1932, the year of the testator's death, was 4.1%. The average interest rate paid by savings banks in the state has steadily declined since 1932 until in 1945 it was only 1.99% and for the first six months of 1946 it was 1.951%. By the general economic trend since 1932 of lower interest rates and in particular of lower dividends paid by savings banks in this state, the income from funds invested in accordance with the terms of clause sixteen has been cut in half since the testator's death. This could be found to be a change in circum-

stances, unforeseen by the testator, that substantially impairs the accomplishment of the gift of the income. The aim is not to better the interests of the life tenants over and above the provision made for them but to prevent impairment of the gifts enjoyed by them at the establishment of the trust by the different, unforeseen circumstances, insofar as this can be done by investments authorized by law for trustees. Deviation should be allowed only with respect to enough funds to make good the shrinkage in income.

"The question has arisen whether the trustee should be permitted to invest in common stocks, although by the terms of the trust or by statute these are not proper trust investments, on the ground that in the event of monetary inflation such stocks would presumably rise in value and would therefore be a hedge against inflation. In states in which the purchase of properly selected shares of stock is a legal trust investment and the terms of the trust do not forbid such purchase, there is no difficulty. In such a case the trustee is merely required to exercise a proper degree of prudence under the circumstances. Undoubtedly, the danger of inflation is a circumstance which the trustee can and should take into account in determining whether and to what extent he should invest in the purchase of shares of stock." 2 Scott, Trusts, *s.* 167, *pp.* 840, 841. Substantially lower interest rates should be carefully considered by a trustee and the court of equity as well as the factor of inflation. The one as well as the other results in loss that is an impairment of the gifts of a trust. It is true that the lower dividends of the savings banks affect only the life tenants, but their rights must be protected as well as those of the remaindermen. This state permits trustees to invest in common stocks within limits and clause sixteen does not forbid it although it directs depositing in savings banks.

In the case of *Morris Community Chest* v. *Wilentz*, 124 N. J. Eq. 580, it was alleged that the trustee of a charitable trust because of a drastic change in economic conditions was unable to get interest rates more than a small fraction of those possible when the fund was established. Provisions of the law relating to investments by trustees and of the wills did not permit the purchase of common stocks. Relief was sought under a statute that empowered the court to permit investment in shares of stock. The court granted the prayer and said (*p.* 583): "I conclude that the objects and purposes of the fund and the interest of the beneficiaries will be promoted by permitting the trustee in the exercise of discretion to invest one-third of the trust fund in common stocks of the kinds enumerated in the bill of com-

plaint in order to produce not only more income but also to safeguard the principal of the fund."

In the case of another charitable trust, *John A. Creighton Home* v. *Waltman*, 140 Neb. 3, 10, 11, it was decided that equity had the power to permit investments in common and preferred stocks under conditions that safeguard the fund, although they were not authorized in the trust instrument. "We come, then, to the question, 'should the powers of the trustee as to investments which it must make be broadened in the manner requested?' The secondary restriction on investments made in the will and in the authority given the trustee by the court must yield to the primary purpose of the trustee, which is the effective operation of the home. The primary object is to preserve the trust property so that it may be used to the greatest advantage to the beneficiaries. This property must produce an income. To do so it must be safely invested in productive property. The present base of investments is shown to be inadequate to the need."

Section 4 of chapter 371 of the Revised Laws makes no distinction between trusts for charitable purposes and others. The test is whether the results of the provisions of a trust are so interfered with and the gifts so diminished by an unanticipated change of circumstances that it is equitable to permit a deviation from the terms relative to investments. Restatement, Trusts, *s.* 167; 3 Bogert, Trusts and Trustees, Part 1, 502. It is true that there is no allegation of need or suffering on the part of the life beneficiaries. These factors are not specified in the statute under consideration. It is shown that these beneficiaries are losing substantially with respect to the gifts the testator provided for them. Said section 4 is intended to give relief against such losses when it can be done equitably so far as all interested are concerned. The requirement that the funds must be invested as stated by the statute for trustees of estates sufficiently safeguards the remaindermen.

R. L., *c.* 371, *s.* 4, first enacted in chapter 206 of the Laws of 1941, does not change substantive rights but deals only with the administration of trusts. It accordingly does not come under the ban of retrospective laws. "The statute does not purport to authorize the court to change substantive rights. It has reference merely to matters of administration." *Reiner* v. *Company*, 126 N. J. Eq. 78, 88.

The request of the trustee for information concerning the termination of the trust does not involve the rights of parties as they are presently entitled to have them enforced against the trustee. The interests of those entitled to the income for life are vested and so far

as is known may not terminate for forty years from the establishment of the trust. Accordingly instructions concerning rights at such a future time are not given. *Weed* v. *White*, 81 N. H. 197; *Gale* v. *Gale*, 85 N. H. 358, 361; *Merchants &c. Bank* v. *Berry*, 93 N. H. 388.

*Case discharged.*

All concurred.