[Civ. No. 44283. Second Dist., Div. Four. Dec. 23, 1974]

Estate of ELSINORE MACHRIS GILLILAND, Deceased.
SALVATION ARMY et al., Petitioners and Respondents, v.
WILLIAM L. MURPHEY et al., as Trustees, etc., Objectors and Appellants.

## Counsel

William L. Murphey, in pro. per., and Larwill, Wolfe & Blackstock for Appellants.

Meserve, Mumper & Hughes, Peter A. Menjou, Bruce S. Ross, Poindexter & Doutre, Lee T. Dicker, Simon, Sheridan, Murphy & Hinerfeld, Simon & Sheridan, Leo Epstein, Allen B. Gresham, Lonergan, Jordan, Gresham & Varner and Henry C. Rohr for Respondents.

## Opinion

**JEFFERSON, J.**—We review, for the second time, an order made by the probate court concerning the testamentary trust created by the will of Elsinore Machris Gilliland, who died in 1967. The present appeal has been undertaken by the trustees of the Gilliland trust, William L. Murphey, Norman J. Essig and the Union Bank.

The Gilliland will was admitted to probate, the account approved and distribution ordered, and the trust established in 1967. The trust provisions set forth a relatively uncomplicated dispositive plan. Mrs. Gilliland died leaving five nieces and nephews (hereinafter, the primary annuitants) to whom the trust was directed to pay from income $25,000 per year, or a total of $125,000. Upon the death of a primary annuitant, the same sum was to be paid (with one exception) to his or her issue, on a representational basis.

The remainder of annual trust income was to be equally divided among the six charities named (hereinafter, the remaindermen), and upon termination of the trust at the time of death of the last eligible

annuitant, the corpus of the trust was to be equally divided among the remaindermen.

The trust instrument specifically limited distribution from the trust to the annuitants to payments from trust income, rather than from principal, and contained no provision for the transfer of principal to anyone, prior to termination of the trust. Trust assets have appreciated considerably since 1967; there appears to be no dispute that they are presently valued in excess of $20 million, and trust income generated therefrom is approximately $750,000 per year.

After Mrs. Gilliland's death, a dispute arose between the primary annuitants and the trustees concerning payment of income taxes on the annuities. The annuitants took the position that their aunt had intended the $25,000 yearly payments to them to be tax free, with the trust responsible for paying the annual income tax liability of each annuitant on the $25,000 received. The trustees did not agree, and filed a petition for instructions in 1967. After a hearing, the probate court upheld the trustees' contention that the annuitants were liable for their own taxes. The annuitants appealed to this court, and obtained a reversal of that determination; the matter was returned to the trial court with directions to hold further proceedings wherein extrinsic evidence could be presented on the issue of the trustor's intent with respect to the annuitants' income tax liability. (*Estate of Gilliland,* 276 Cal.App.2d 258 [80 Cal.Rptr. 876]; see also, *Estate of Russell,* 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353].)

Before the hearing took place, negotiations were undertaken by the annuitants and the remaindermen (without the participation of the trustees)[1] for the purpose of settling the income tax dispute as well as another controversy which had arisen concerning the duration of the annuities. A petition for instructions was filed by the remaindermen with respect to this latter issue; the petition for instructions on the income tax matter was still pending; a further petition was filed by a remainderman requesting court approval of a compromise agreement resulting from the negotiations between the annuitants and the remaindermen, an agreement counsel for the trustees opposed; all of these matters were consolidated for hearing in 1973.

[1]One of the appellant trustees, Norman J. Essig, is also a primary annuitant; he did not sign the compromise agreement under consideration here, probably on the ground of conflict of interest, as counsel for the annuitants represented to the trial court that he favored the settlement.

The compromise agreement presented to tne trial court essentially provided that the trust would pay from principal thé sum of $3,000 each year to each primary annuitant to assist in discharging the income tax liability of each on the annuity paid, a total of $15,000 per year. It also provided for a onetime lump sum payment from income of $25,000 to each annuitant as reimbursement for past income tax liability not assumed by the trust. As the result of the dispute concerning the duration of the annuities, the compromise specified that $100,000 was to be removed from principal by the trustees, to be maintained separately in four equal shares "for the benefit of" possible future claimants of the right of representation who were issue of four of the annuitants. And, finally, the compromise provided for the immediate payment from principal of $1,200,000, to be divided equally between the six charitable remaindermen.

The trial court heard no evidence, but concluded, after oral argument, that "it is in the best interests of and advantage to said Trust and all those interested herein that the Agreement in Compromise . . . be approved and its terms executed by the Trustees." It accordingly ordered the trustees to execute the dispositive terms of the settlement. The other petitions for instructions were ordered off calendar as "moot" in the light of court approval of the compromise. The trustees then appealed the order.[2]

They contend on this appeal that the probate court committed error in approving the compromise agreement made without their consent, which would result, if executed, in a substantial modification of the trust as created in the will without recognizable justification for such modification. ■ We agree, and reverse the order.

It is elementary, of course, that " 'the paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible.' " (*Estate of Russell, supra,* p. 205; Prob. Code, § 101.)

---

[2]The trustees also contend that the compromise and order as written actually provide for the payment of an additional $25,000 per year from income to each primary annuitant, since that recital is made therein, and the trust instrument already contains that provision. We assume that the recital in the compromise and order merely reiterated the rights of the primary annuitants given by the trust instrument, although the situation is confusing. However, in view of our holding here, there appears no need for clarification.

█ In the case of testamentary trusts, the rules regarding allowable deviations from trust provisions are equally clear and well established. "The power of a court of equity to permit or direct a deviation from the terms of the trust is at least as extensive in the case of charitable trusts as it is in the case of private trusts. The courts will direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust." (4 Scott on Trusts (3d ed. 1967) § 381, p. 2983.) Unusual or emergent circumstances afford the basis for deviation.

█ California law adheres to these basic trust principles, but, as was stated as recently as 1971 by the California Supreme Court, in *Crocker-Citizens National Bank* v. *Younger,* 4 Cal.3d 202, 211 [93 Cal.Rptr. 214, 481 P.2d 222, 56 A.L.R.3d 1228]: "However, 'the court should not permit a deviation simply because the beneficiaries request it where the main purpose of the trust is not threatened and no emergency exists or is threatened,' [citation], for the power to modify a trust must be exercised 'sparingly and only in the clearest of cases' [citation]. Deviation is not justified merely because it would be more advantageous to the beneficiaries or would offer an expedient solution to problems of trust management." (See also, Rest. 2d Trusts, §§ 164-167; *Stanton* v. *Wells Fargo Bank etc. Co.,* 150 Cal.App.2d 763, 770 [310 P.2d 1010]; *Estate of Traung,* 207 Cal.App.2d 818, 829-834 [24 Cal.Rptr. 872].)

It is true that courts are often called upon to approve compromises made (particularly between family members) which do have the effect of altering trust provisions (see Bogert on Trusts and Trustees (2d ed. 1962) § 994, p. 437) but ordinarily such alterations are allowed because a situation has developed for which no express provision was made by the trustor, and it becomes necessary for the court to ascertain, as best it can, what the intent of the trustor would have been under present circumstances.

That duty fell upon the court in *Estate of Horton,* 11 Cal.App.3d 680 [90 Cal.Rptr. 66] (a case upon which the respondents herein rely), because the trust instrument did not provide for the distribution of all of the annual trust income which the assets actually generated, a circumstance unforeseen by the trustor. *Horton* is, we believe, readily distinguishable from the instant case, where the trust instrument, while there may

be problems of interpretation concerning particular clauses, clearly provides for distribution of all annual income realized.

In the instant case, the trustor contemplated a scheme of providing for her relatives and their issue during their lifetime on a somewhat modest scale (in relation to the available assets), reserving excess income and the corpus to the named charities. She limited payments to the annuitants and to the remaindermen from income only, rather than principal, until termination of the trust. ■ That the compromise approved by the court substantially alters her plan is obvious. Respondents point to the large amount of assets in the trust, arguing that the deviation allowed in her plan is minor, and that the present transfer of $1,200,000 would not in any way thwart the basic charitable intent of the trustor. We are cited to no authority for the proposition that trusts may be more easily altered as the available trust assets increase. Had Mrs. Gilliland wished to allow present distribution of the corpus (which was worth approximately $16 million at the time of her death) to the charities involved herein, she could have so provided; she did not.

The trial court heard no evidence and made no findings that emergent or unusual circumstances threatened the Gilliland trust and necessitated modification of its terms. The decisional law, as discussed herein, does not reflect that the mere existence of a dispute over trust provisions constitutes such a circumstance. Findings concerning the circumstances were essential to support the modification ordered, unless some other ground exists giving the probate court the power to modify testamentary trusts whenever it appears to be in the "best interests" of the particular trust involved.

Respondents contend that "some other ground" may be found in Probate Code section 1120.2, which provides in pertinent part: "On petition of the trustee, made at any time, or on petition of the executor or administrator included in a petition for preliminary or final distribution, where after hearing it appears to be necessary or desirable in order to carry out the purposes of the trust that the trustee be given powers not expressly contained in the will or otherwise conferred by law, the court may in its discretion confer upon the trustee any or all of the following powers when it appears to the court that such powers are not inconsistent with the provisions or purposes of the trust . . . ."

Among the specific powers enumerated in this section are "(15) To pay or contest any claim; to settle a claim by or against the trust by

compromise, arbitration, or otherwise; and to release, in whole or in part, any claim belonging to the trust to the extent that the claim is uncollectible; to institute, compromise and defend actions and proceedings."

There is furthermore a subdivision (18) which provides that the probate court may allow a trustee "[t]o exercise any other power or powers which to the court appear necessary or desirable."

This section was added to the Probate Code in 1967 (by Stats. 1967, ch. 1219, § 2) without legislative hearings or reports (insofar as we have been able to determine) which might have illuminated the intention of the Legislature. The section was sponsored by the State Bar of California (40 State Bar J. 552, 565 (1965) and 42 State Bar J. 218, 222 (1967)) and was modeled after the Uniform Trustee Powers Act, with one important exception: unlike that act, this section does not *automatically* grant certain enumerated powers to testamentary trustees in California, but permits them to apply to the probate court for permission to use them. Under our law, the probate court remains directly responsible for the supervision of testamentary trusts. (Review of Selected 1967 Code Legislation, Probate (Cont. Ed. Bar) p. 195.)

It is well known that the State Bar has worked to modernize and streamline probate procedures. ■ This section was intended to further that objective, by investing discretionary and supervisory powers in the probate court, to be conferred upon testamentary trustees for good cause shown and upon application by the trustee. General supervisory power over all disputes arising from the management of a testamentary trust is already part of probate court jurisdiction (Prob. Code, § 1120; *Estate of Traung, supra,* p. 827) but the amendment particularly concerns procedures available to testamentary trustees when faced with a problem not expressly dealt with in a trust instrument.

There is nothing in the section which suggests, and we have found nothing in the decisional law which holds, that Probate Code section 1120.2 was enacted for the purpose of changing the trust rules applicable to trust modification. Unless the Legislature expressly so provides, we may not read such intention into the statute as it now exists. The section was primarily intended, we are certain, to deal with situations where no express provision concerning a necessary power was included in the trust instrument, and in such a situation, the section allows great discretionary

latitude to the probate court, limited by the admonition contained in the section itself, that the court's order adhere to the basic trust purpose.

We hold, therefore, that section 1120.2 may not be relied upon to support a determination by the probate court that a trustee be ordered to deviate from the trust terms without substantial evidence and findings establishing the existence of sufficiently unusual or emergent circumstances to justify the order made.

In the instant case, the negotiations for compromise may have been undertaken by all of the parties in good faith, but the results were questionable: a large amount of principal was extracted from the trust by the remaindermen, with the consent of the primary annuitants who had nothing to lose, in return for the remaindermen's support for invasion by the annuitants of a small amount of principal. The remaindermen took advantage of a dispute which *primarily* concerned the primary annuitants and the trustees, to engage in a settlement allowing present distribution of principal in direct contradiction to the expressed intention of the trustor. The advantage taken was referred to by counsel for the annuitants when he represented to the trial court that the original demand of the remaindermen for principal distribution, during the negotiations, had been considerably higher than the $200,000 for which each settled.

Respondents refer in their brief to the axiom that the law favors settling disputes which might otherwise engender "complex" litigation. The deference to such settlements gives way, however, to adherence to basic trust law. Furthermore, we fail to see great complexity in the issues dividing the parties, and note that it would be highly undesirable to make decisional law which encourages the use of disputes over interpretation of a trust instrument to form the basis for an assault on the dispositive terms of a trust, thereby thwarting the trustor's intent.[3]

Judgment reversed; the petitions for instructions ordered off calendar are to be returned to the calendar.

Files, P. J., and Cole, J.,* concurred.

A petition for a rehearing was denied January 10, 1975, and respondents' petition for a hearing by the Supreme Court was denied February 19, 1975.

[3]We do not consider appellants' further argument that the doctrine of res judicata, as such, precludes the making of the order from which the appeal was taken.

*Assigned by the Chairman of the Judicial Council.