[L. A. No. 447. Department Two.—April 12, 1899.]

ADAH H. GILBERT, Appellant, v. E. H. PENFIELD et al., Respondents.

TRUST—ACTION FOR ENFORCEMENT—FINDING AS TO TERMS—CONFLICTING EVIDENCE—APPEAL.—In an action to have a trust declared, and to compel a conveyance of lands, where there is a controversy as to the terms of the trust sought to be enforced, and there is conflicting evidence thereupon, and evidence tending to show that the trust as found by the court correctly states the understanding of the parties, the finding is conclusive upon the appellate court.

ID.—POWER TO TAKE UP MORTGAGES, INCLUSIVE OF POWER TO REMORTGAGE. A power given by the terms of the trust "to provide for taking

up" of certain mortgages specified, and "to hold the property until a favorable time for the sale of the same should come," is inclusive of the power to remortgage the property for the purpose of taking up the mortgages specified.

ID.—IMPLIED POWERS OF TRUSTEE.—Though every act of the trustee which is in contravention of the trust is void, yet the trustee has authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making it effectual.

APPEAL from an order of the Superior Court of Santa Barbara County denying a new trial.    W. B. Cope, Judge.

The facts are stated in the opinion.

Edward M. Selby, for Appellant.

Richards & Carrier, for Respondents.

CHIPMAN, C.—Action to have a trust declared in favor of plaintiff as to certain lots situated in Santa Barbara, and that defendants E. H. and W. H. Penfield convey said lots to plaintiff.    They denied the alleged trust, and averred that defendant E. H. Penfield took a conveyance from plaintiff of the lots in question and holds the title in trust, as he alleges it to be.

Defendant W. H. Penfield filed a cross-complaint asking foreclosure of a deed, held by him, as a mortgage to one of the lots, the subject of the alleged trust.    J. C. Gilbert is husband of plaintiff, and is made defendant in the cross-complaint.

The court, as conclusions of law, found plaintiff not entitled to the relief asked by her;   that the legal title to the lots in question is vested in defendant E. H. Penfield, subject to certain trusts set forth in the findings; that defendant W. H. Penfield has a valid subsisting mortgage on certain of the property and is entitled to foreclosure thereof, and that the rights of plaintiff and said J. C. Gilbert are subordinate to the lien of said W. H. Penfield.    Plaintiff appeals from an order denying her motion for a new trial, but does not appeal from the judgment.    The only question presented by counsel for appellant is, Does the evidence support the findings?

Plaintiff and defendants, the Penfields, are cousins; plaintiff came to California in August, 1887, and was then unmarried,

and made her home with defendant, E. H. Penfield, at Santa
Barbara; upon the recommendation of her cousin, E. H., she
purchased certain Santa Barbara city lots in block 80 and in
block 147, and a certain other lot she purchased contrary to his
advice; E. H. testified, and the court found, that before she
made any purchases he verbally promised, as to those made upon
his approval, "that he would stand between her and loss, but
. . . . he received no consideration for or by reason of, and
reaped no benefit from, said purchases or any of them, and had
no interest in them." The purchases in block 80 and block 147,
recommended by E. H., were made in December, 1887—the lots
in block 80 being subject to two mortgages held by one Hassin-
ger, and the lot in block 147, being under mortgage to one
Pilcher. On March 27, 1888, plaintiff borrowed six hundred
dollars on her note, signed also by E. H., to raise money for
her own uses, and which was used by her; this note E. H. after-
ward paid, and "plaintiff has never repaid him the whole or
any part of the sum so paid by him on said note." In 1889
plaintiff paid the Pilcher mortgage, and the spring of 1890
found her the owner of the lots in blocks 80 and 147, subject
to the Hassinger mortgages; payment was pressed by Hassinger,
"and, plaintiff being unable to meet the indebtedness, the de-
fendant E. H. Penfield offered to take the property from plain-
tiff for the purpose of handling the indebtedness for her and
carrying the property until an advantageous sale could be
effected. Accordingly, plaintiff conveyed to him all the prop-
erty described in the complaint upon the following trusts, and
no others: To provide for taking up the two Hassinger mort-
gages, and to hold the property until a favorable time to sell
the same should come, at which time he should sell the same
and apply the proceeds of sale, first, to the payment of the sum
due upon the indebtedness represented by the Hassinger mort-
gages and to reimburse himself for the payment of the six hun-
dred dollar note, and then to apply the surplus to repaying
plaintiff her outlay on said lots, and then to divide any excess
between plaintiff and himself." Plaintiff conveyed to E. H.
upon the trusts above stated, April 30, 1890, and on the same
day E. H. procured his brother, defendant, W. H., to purchase
the two Hassinger mortgages for the sum of nine hundred and

ninety-nine dollars, the amount then due thereon.   On November 12, 1891, E. H. mortgaged the lots in block 80 to W. H. for the amount of principal and accrued interest of the Hassinger mortgages, and these latter mortgages were satisfied of record.   On August 30, 1895, E. H. delivered to W. H. a deed conveying these lots to W. H., which bore date May 1st, and was acknowledged May 2, 1895.   This deed was intended as a mortgage, and upon its delivery W. H. canceled and surrendered to E. H. the mortgage of November 12, 1891, and the note secured by it.   The indebtedness represented by both the mortgage and the deed "is the same indebtedness secured by the two said Hassinger mortgages."   There is no finding and no evidence explaining the reason for substituting first the mortgage and next the deed for the Hassinger mortgages held by W. H.   But the court finds that E. H. executed these instruments without any intention to defraud plaintiff, and that when he received the deed, he, W. H., had no notice of any rights of plaintiff except that E. H. held the title upon the trusts as found by the court above stated.

While claiming that the evidence does not support the findings, appellant makes the case really to turn upon the question: Had E. H., as trustee, the power to mortgage?

The evidence is conflicting in many particulars, especially as to the trust alleged in the complaint and the trust as found. There is evidence tending to show that the trust as found by the trial court correctly states the understanding of the parties, and as the evidence is conflicting the finding is conclusive upon this court.

Turning to the language of the trust, and interpreting it in the light of the then existing circumstances and the purpose for making the conveyance, we think the trust carried with it the power to remortgage the property to take up the Hassinger mortgages, foreclosure of which was threatened.   The court found on sufficient evidence that market values had greatly fallen, and sale could not be made to any advantage.   The only practical way out of the danger which lay in foreclosure by Hassinger was to find some one who would carry the Hassinger mortgages.   It was not of any importance to plaintiff whether the one who came to her relief should do so by taking an assign-

ment of those mortgages and holding them, or whether he should require a new mortgage to take their place. The Hassinger mortgages were past due, and would in course of time be barred by limitation. The statute had run against the Hassinger notes before this action was brought; and in point of fact W. H. did not ask foreclosure until five years after he took his mortgage, and not then, as he testified, until plaintiff had forced him to it, for his own protection, by this action.

The power given by the trust was: "To provide for taking up the two Hassinger mortgages, and to hold the property until a favorable time for the sale of the same should come." The evidence was that a sale could at no time, after plaintiff conveyed to E. H., have been made for enough to pay the indebtedness secured to be first paid by it. That this contingency of remortgaging must have been contemplated is, it seems to me, obvious from the clause authorizing E. H. "to provide for taking up the two Hassinger mortgages," followed by the clause "and to hold the property until a favorable time for the sale," et cetera. How else could he provide for taking up these mortgages if the sale of the property was to be postponed indefinitely? It is true, as claimed by appellant, that every act of the trustee not authorized by, or which is in contravention of, the trust is void; but a trustee has "authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making it effectual." (2 Pomeroy's Equity Jurisprudence, sec. 1062.) I think the power to mortgage is not only clearly implied in the directions given, but that the natural reading of the trust gives the authority.

It is not necessary, therefore, to fall back upon the alternative proposition of defendants in support of the decree of foreclosure, to wit, that W. H. was subrogated to the rights of Hassinger, and that the lien of the latter was preserved, although the evidence of the debt was extinguished; and that, even if the new mortgage made by E. H. to W. H. was void, the original or Hassinger mortgages were revived for the protection of W. H., who advanced the money.

Appellant points out several alleged contradictions in the findings—for example: The court finds that the execution of

the trust has not become impossible on account of the conveyance alleged (i. e., the mortgage to W. H.); another example: the court finds that this conveyance (mortgage) was not fraudulent. The contention is, that because the conveyance was unauthorized and void, it must be treated as a fraud upon plaintiff's rights; and that, if allowed to be foreclosed, it would make the trust impossible, hence the findings are contradictory of and inconsistent with each other. These alleged consequences flow from the erroneous assumption that the mortgage to W. H. was unauthorized. And so of the other assignments of error; they all find their origin in the same unwarranted assumption.

The foregoing disposes of the points made by appellant's brief; and, as we discover no error in the conclusions of the court, it is advised that the order denying the motion for a new trial be affirmed.

Haynes, C., and Pringle, C., concurred.

For the reasons given in the foregoing opinion the order denying the motion for a new trial is affirmed.

Henshaw, J., Temple, J., McFarland, J.