[Civ. No. 3534. Third Appellate District.—October 1, 1928.]

THOMAS G. DUNCAN, Appellant, v. GEORGE M. DORMER et al., Respondents.

Clark & Law for Appellant.

John C. Kleber for Respondents.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment in favor of the defendants in an action for labor performed and materials furnished. The complaint contained four separate counts. The first cause of action charged the defendants George M. Dormer, William J. Larkin and his wife Emma, as copartners doing business under the fictitious name of Emma Belle Mines Company, with being indebted to the plaintiff in the sum of $1,750 for labor performed. The second count alleged an indebtedness of $497 against the same defendants, in the same capacity, for materials furnished. The third cause was against these same defendants, for the same amounts, as trustees of the Emma Belle Mines Company. The last count was against the same defendants, as individuals, for the same value of said services and materials furnished. The trial was in the nature of an accounting, nearly every item of which was contested. February 28, 1923, the defendants were organized as an express trust for the purpose of operating an oil mining enterprise at Kelso. About the middle of May, 1923, the defendant William J. Larkin met and employed appellant to take charge of their plant as manager. The amount of his salary is in

dispute. Appellant claims that he was promised $250 per per month for his services, while Mr. Larkin asserts that he was hired at $5 per day. The appellant employed two workmen to assist him. The respondent William Larkin admitted that these men were to receive $4 and $5 per day, respectively, for their services, less $1 apiece per day for their board. It appears that appellant and these two helpers worked substantially seven months, from May 18th to December 18, 1923. Some machinery and materials were purchased by appellant and used in the operation of the enterprise, the value of which was disputed. The respondent William Larkin claimed to have paid appellant the sum of $1,457.57. This was conceded by appellant, who claimed that he had expended in behalf of his employer the total sum of $3,705.31, and that no part of his wages had been paid. At the rate of $250 per month appellant's wages amount to the sum of $1,750, while the admitted net wages of the workmen aggregated the additional sum of $1,470. The only evidence of the payment of appellant's claim consists of the testimony of William J. Larkin, as follows: "Q. And in compliance with that agreement, did you make any payments to him for his services? A. Yes, I sent him always more than enough over the men's wages to pay him. Q. Over and above other men's wages? A. Yes. Q. Then you sent a lump sum every so often, and he was to pay himself and pay the men out of that? A. Yes, and sometimes a great deal more. Q. And he was allowed out of those remittances you made Mr. Duncan, for himself? A. Well, he paid himself." But the admission as to the specific amount which was in fact paid, to wit, $1,457.57 clearly leaves a balance due to the appellant. In fact, the respondent William Larkin admitted that there was still due to appellant the sum of two or three hundred dollars. Mr. Larkin testified: "Q. Is there any money unpaid to him now, for his services. . . . A. Well, in the neighborhood of between two and three hundred dollars."

The court found that the alleged copartnership did not exist, but that the defendants were duly organized as a trust under the name of the Emma Belle Mines Company; that the appellant was employed in May, 1923, by the respondent William J. Larkin at a salary of $35 per week for a period of six and a half months, but that he received pay-

ment in full for such services; that the appellant also purchased certain machinery and materials which were used in the operation of the mine, for which he was also paid in full; that said employment was contracted for solely by the respondent William J. Larkin, as an individual, who therefore became liable for such obligations; that the appellant then had no knowledge of the existence of said trust organization. There was neither evidence nor findings to the effect that the respondent William J. Larkin was authorized by the declaration of trust, or otherwise, to incur obligations to become a charge against the trust estate.

The appellant contends that the findings are not supported by the evidence. It is apparent that this is true, and that the undisputed record shows that the appellant was not fully paid. ▮ While it is true that a trustee, acting within the scope of his authority, may bind the trust property to the same extent that the acts of an agent will bind his principal (Civ. Code, sec. 2267; *Cullinan* v. *Mercantile Trust Co.*, 80 Cal. App. 377, 385 [252 Pac. 647]), yet, in the absence of express authorization either in the declaration of trust, or otherwise, he will be deemed to be personally liable for obligations which he incurs. (*Hall* v. *Jameson*, 151 Cal. 606, 611 [121 Am. St. Rep. 137, 12 L. R. A. (N. S.) 1190, 91 Pac. 518].) In 26 Ruling Case Law, 1316, section 175, it is said: "The general rule undoubtedly is that a trustee cannot charge the trust estate by his executory contracts unless authorized to do so by the terms of the instrument creating the trust. On such contracts he is personally liable, and the remedy is against him personally." ▮ Having obtained personal credit for the purchase of materials and the performance of labor, without disclosing the existence of the trust organization which he represented, or his agency therefor, the respondent William J. Larkin became personally liable for such obligations. (Civ. Code, sec. 2343.) For the reason that the record indicates that this respondent is personally liable for the obligations sued upon, and that the appellant has not been fully paid, it necessarily follows that the judgment should be reversed. It is so ordered.

Plummer, J., and Finch, P. J., concurred.