[L.A. No. 29703. In Bank. Feb. 26, 1971.]

CROCKER-CITIZENS NATIONAL BANK, as Trustee, etc.,
Plaintiff and Respondent, v.
EVELLE J. YOUNGER, as Attorney General, etc.,
Defendant and Respondent;
MARIE ECKSTROM et al., Defendants and Appellants.

**COUNSEL**

Larwill & Wolfe and Charles W. Wolfe for Defendants and Appellants.

Kadison, Pfaelzer, Woodard & Quinn, Stuart L. Kadison and Jorge A. Uribe for Plaintiff and Respondent.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, and Carl Boronkay, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**BURKE, J.**—Defendants Marie Eckstrom (Marie) and Thomas F. Eckstrom, Jr., (Thomas) appeal from a judgment decreeing that the appointment of Marie to a trustee's advisory committee was void, declaring that a vacancy had existed on the committee since the date of her attempted but invalid appointment, and appointing a new member to fill the vacancy. We have concluded that the judgment should be affirmed, with minor exceptions.

The trust which has given rise to this litigation was established in 1950 by Thomas P. Eckstrom, Sr., (trustor) as a revocable *inter vivos* trust. Crocker-Citizens National Bank, plaintiff herein, was named as sole trustee. The trust provided that during the lifetime of the trustor $200 per month was to be paid to each of his children, Thomas and Marie, and that the balance of the net income was to be paid to the trustor. If either child died during the trustor's lifetime, the survivor was to receive the other's share of income, i.e., a total of $400 per month. The sum of $15,000 was set aside for the purchase of a home for Marie's use during her life, the trustee to retain title to the property.

Upon the death of the trustor, each child was to receive a cash payment of $5,000 and the annual income payments to each were to be increased to $5,000, payable in monthly installments. Upon the death of either Thomas or Marie, the annual payments to the survivor were to be increased to $10,000.

Separate provision was made for the trust's substantial principal. Upon the trustor's death, 20 percent of the principal was to be distributed in equal portions to two named charities. Five years thereafter, 20 percent of the then remaining reasonable value was to be distributed as follows:

"One-half (½) thereof to any Boys' Town Organization established for carrying on work with boys along the general lines developed by Father Flanagan's Home of Boys Town, Nebraska, and the remaining one-half (½) thereof to any organization established to further the work of preventing, diagnosing and curing cancer along the general lines developed by the Cancer Prevention Society Clinic, Inc. of Los Angeles, California."

Similar distributions were to be made 10, 15 and 20 years after the trustor's death and the balance of the principal was to be distributed for the same two charitable purposes and in the same proportion after 25 years.

In order to provide a mechanism to designate the specific charitable institutions which should receive principal distributions at the stated inter-

vals, the trust established a three-member committee. Those initially appointed to serve on this committee were Edward Walsh (a long-time friend of the trustor), Thomas Eckstrom, Jr., (the trustor's son) and the bank-trustee. If either of the individual members of the committee died, resigned, or was unwilling or unable to act, the remaining members were to appoint "a new member," and if they failed to do so, the appointment was to be made by a court of competent jurisdiction. A majority vote of the committee was to be binding in all decisions and on all parties involved.[1]

In May 1951, approximately six months after the trust had been created, the trustor executed an "Amendment to Declaration of Trust." This amendment provided that if both Thomas and Marie died prior to the termination of the trust, the income should be accumulated and added to the principal. It also provided that members of the committee should receive reasonable fees for their services rendered pursuant to paragraphs 7, 8 and 9 of article IX. (See fn. 1, *ante*.) However, the most significant change effected by this amendment was the addition of the following paragraph:

"After the demise of the TRUSTOR and during such time as THOMAS ECKSTROM JR. and/or MRS. MARIE HART [as Marie Eckstrom was then known] are receiving payments of income and/or principal from the trust, if said payments to which either of said beneficiaries are entitled shall be insufficient in the discretion of the COMMITTEE created under the provisions of paragraph 7 of article IX of said Declaration of Trust to provide for the reasonable support, care, and comfort of either of them, the TRUSTEE may pay to such beneficiary, or apply for his or her benefit, so much of the principal as the TRUSTEE may deem proper or necessary for that purpose."

Thus, upon the trustor's death, the committee acquired the further power, under the "distress clause" set out immediately above, to determine the need of Thomas and Marie for additional payments. Five years thereafter, the committee was required to make the first of five designations of charitable institutions to which distributions of principal should be made.

Edward Walsh, one of the original committee members, died in September 1955.[2] The remaining members, Thomas and the trustee, were unable to agree upon a successor. Thus in 1956 the Los Angeles County

---

[1]The above provisions are contained in paragraph 7 of article IX of the Declaration of Trust. Paragraphs 8 and 9 of this article give the committee additional powers and duties in the event the trustor transferred certain real property or a controlling bloc of corporate stock to the trust.

[2]Thomas Eckstrom, Sr., the trustor, had died sometime earlier. His death occurred on a date not positively identified in the record, but apparently during 1952.

Superior Court designated Mr. Otho Lord to succeed Mr. Walsh as a committeeman. Mr. Lord served until his resignation in 1958.

In August 1958, Thomas, Marie and the trustee executed a document entitled "Nomination, Agreement and Election of Third Committeeman" by which Marie was appointed to fill the vacancy caused by Mr. Lord's resignation, upon the terms, conditions and agreements prescribed therein. Simply stated, the nomination agreement provided that should either Marie or her brother apply for payments under the distress clause, she would be disqualified and unable to act upon the question of whether additional payments were necessary, and that upon such disqualification, there would be a temporary vacancy in the committee, to be filled by a temporary committee member upon the agreement of the two other members of the committee, and failing such agreement, by the Superior Court of Los Angeles County. Because of the central role this document plays in the resolution of the instant case, we shall set out its pertinent provisions at length in the footnote.[3]

---

[3]The agreement provides in relevant part as follows:

"WHEREAS Thomas F. Eckstrom, Jr. has nominated said Marie Eckstrom to fill the vacancy caused by the resignation of said Otho Lord; and

"WHEREAS the Trustee, the other member of the committee, is willing to join in the appointment of Marie Eckstrom providing that she agree that she would be disqualified to act whenever she or her brother . . . should seek relief under said distress clause, but said Trustee does not desire to deprive either of said beneficiaries of their respective rights to additional payments under said distress clause in the event that an impartial committee should determine that payments provided for in said Declaration of Trust are insufficient for the reasonable support, care and comfort of either of said beneficiaries, and

"WHEREAS Marie Eckstrom recognizes that she would be disqualified to sit or act on said committee to determine in respect to the matters set forth in said distress clause and would therefore be unable to act,

"Now, THEREFORE, IT IS AGREED among the parties hereto as follows:

"1. Thomas F. Eckstrom, Jr., . . . hereby nominates Marie Eckstrom as a member of said committee, . . .

"2. Marie Eckstrom . . . admits and declares that in the event she is elected . . . and in the further event that she or said Thomas F. Eckstrom, Jr., should apply for payments under said distress clause she would be disqualified and therefore unable to act, and all parties hereto agree and declare that in such instance there would be a temporary vacancy in the committee and would then be temporarily filled by the other members of the committee, or if they be unable to agree, by the Superior Court of Los Angeles County, such temporary committee member to hold office and to act . . . only in respect to such matters as to which Marie Eckstrom is disqualified to consider, only so long as Marie Eckstrom's said disqualification shall continue.

"3. Trustee, in consideration of the agreements of Marie Eckstrom expressed in paragraph 2 hereof, declares that its only objection to the appointment of Marie Eckstrom has been eliminated and it therefore seconds her nomination. . . .

"4. Said Trustee and said Thomas F. Eckstrom, Jr., . . . do hereby appoint Marie Eckstrom a member of said committee, . . . and said Marie Eckstrom hereby accepts such appointment subject to the conditions set forth in paragraph 2 hereof.

"5. IT IS UNDERSTOOD AND AGREED by and between the parties hereto that the

Pursuant to the appointment, Marie served on the committee without incident until 1966. At that time Marie and Thomas called a meeting of the committee to consider their respective applications under the distress clause for an immediate payment to each of $50,000 and, beginning in 1968, annual payments of $20,000 to each in addition to other sums payable to them.

The trustee refused to participate in the meeting, contending that under the nomination agreement appointing her to the committee, Marie was disqualified from acting on such a request. The trustee then commenced this action against Thomas and Marie, joining as defendant the Attorney General, as representative of the as yet undesignated charities to be named as recipients of the three remaining distributions of principal.

Plaintiff trustee contended that, by reason of the pending application of the Eckstroms for payment under the distress clause, Marie was disqualified to act as a committee member under the nomination agreement. It requested that the temporary vacancy thereby occurring be filled by the court since plaintiff and Thomas were unable to agree either as to the existence of a vacancy or as to who should fill it. Finally, plaintiff argued that if for any reason the nomination agreement should be held invalid, its provisions were not severable and therefore the agreement was totally ineffective as an appointment of Marie to the committee.

The Eckstroms took the position that Marie had been validly appointed to the committee and that her functions as a committee member could not be circumscribed by any language in the nomination agreement. They thus asserted that the nomination agreement was valid and binding insofar as it appointed her to the committee but that it was invalid insofar as it imposed limitations on her authority to act and that the invalid portion should be severed. Accordingly, they contended that no vacancy existed on the committee notwithstanding their pending applications under the distress clause and that the existing committee should be permitted to consider and act upon these applications as well as the selection of the charities to receive the third distribution of principal due under the terms of the trust.

The Attorney General contended that the nomination agreement was ineffective to appoint Marie to the committee, that the attempted appointment was void *ab initio* and that therefore a vacancy had existed since

disqualification of Marie Eckstrom to vote or to exercise discretion in respect to relief in her behalf or in behalf of her brother . . . shall cease as soon as the committee consisting of Marie Eckstrom's temporary successor and the other members of the committee shall have exercised their discretion under said distress clause, but Marie Eckstrom's disqualification may occur from time to time and as often as she or her brother is asserting a claim or further claim under said distress clause."

1958. Alternatively, he argued that if the nomination agreement *had* effectively appointed Marie, she was bound by its terms and hence dis-. qualified from acting on the requests for payment to herself and her brother.

The trial court's findings of fact parallel the statement of facts set out in our opinion thus far. In addition, it found that "[t]he intention of the trustor was not to vest control of the committee in his surviving children, but rather that there should be a disinterested majority of said committee," and that "[t]he charitable purposes of the trust were foremost in the mind of the trustor in creating the trust." It concluded that the nomination agreement was contemplated neither by the Declaration of Trust nor by the subsequent amendment, was invalid, and represented action which the trustee and the defendants were not authorized to take. Since it was thus void *ab initio* the court concluded that there had been a vacancy on the committee since Mr. Lord resigned in 1958. Opportunity was given to the trustee and Thomas to fill the vacancy. Apparently, however, they were once again unable to agree and thus the court, in accordance with the Declaration of Trust, appointed Joseph W. Vickers, as successor to Mr. Lord. Defendants Thomas and Marie appeal from that judgment.

It is apparent from the trust provisions set forth above that the trust neither authorized nor contemplated that the remaining members of the committee could select an "on again, off again" co-member qualified to serve in some, but not all, trust capacities and to exercise some, but not all, trust powers. The trust instrument created a three-member committee which was to operate under the majority vote principle, with each member having equal power and athority. However, the nomination agreement in essence purported to set up a four-member committee, with Marie and the unnamed, "pro tempore" appointee sharing and alternatively exercising the powers of a single member. Although the trust does not specifically forbid such a division or diversion of trust powers, that is its necessary implication, for otherwise two members of the committee could arbitrarily allocate and divide the powers and duties of a third member among several, or more, persons rather than vesting them in "a new member" as provided in the trust.

Therefore, we conclude that the trust instrument, as amended, required that all decisions entrusted to the committee's care were to be made by the three members named therein, or their duly appointed successors, and that the subsequent appointment of a co-member disqualified from making certain of those decisions constituted a deviation from the terms of the trust. We now discuss whether or not that deviation was unlawful, thereby rendering Marie's appointment void.

■ The rules pertaining to the rights and duties of trustees generally would be broadly applicable to trust advisors or other persons holding trust powers, such as the members of the committee herein. "Trust advisers with powers of direction must be considered fiduciaries. . . . The few courts that have dealt with advisers have generally recognized their fiduciary nature by comparing them with cotrustees." (Note, *Trust Advisers*, 78 Harv.L.Rev. 1230, 1231.) We have been unable to find any authority whatsoever for the position that cotrustees or other persons holding trust powers may, by private agreement between themselves, either restrict the powers which a co-member may properly exercise or divide trust powers among two or more persons. ■ Of course, the terms of the trust may provide that certain powers shall be exercised by one trustee and other powers by another (2 Scott, Trusts (3d ed. 1967) § 185, p. 1488), and the same would be true with respect to advisory committee powers, but in the absence of express authority in the trust instrument, an appointment which purported to so restrict or allocate trust powers would be void. ■ "A power to appoint trustees conferred by the terms of the trust can be exercised only under the circumstances and in the manner provided by the terms of the trust." (Rest.2d Trusts, § 108, com. (f), p. 239.)

Thus, in general, trustees are bound by the terms of the trust and possess only that authority conferred upon them by the trust. (Civ. Code, §§ 2258, 2267; Rest.2d Trusts, §§ 164, 186; 2 Scott, Trusts, *supra,* § 164, p. 1254.) ■ As Scott puts it, "The extent of the duties and of the powers of a trustee depends primarily upon the terms of the trust. Insofar as the trust instrument expressly or by implication imposes duties or confers powers upon the trustee, the terms of the trust determine the extent of his duties and powers except so far as the performance of the duties or the exercise of the power is or becomes impossible, or the provision is illegal, or there has been such a change of circumstances as to justify or require deviation from the terms of the trust." (Accord, Rest. 2d Trusts, *supra,* §§ 164-167; *Estate of Traung,* 207 Cal.App.2d 818, 829-834 [24 Cal.Rptr. 872]; *Stanton* v. *Wells Fargo Bank etc. Co.,* 150 Cal.App.2d 763, 770 [310 P.2d 1010]; *Leonardini* v. *Wells Fargo Bank,* 131 Cal.App.2d 9, 13 [280 P.2d 81]; *Security-First Nat. Bank* v. *Easter,* 136 Cal.App. 691, 697 [29 P.2d 422].)

■ Undoubtedly, unusual circumstances may arise which justify deviation from the trust. However, "the court should not permit a deviation simply because the beneficiaries request it where the main purpose of the trust is not threatened and no emergency exists or is threatened," (*Stanton, supra,* at p. 770), for the power to modify a trust must be exercised "sparingly and only in the clearest of cases" (*Leonardini, supra,* at p. 13). ■ Deviation is not justified merely because it would be more advan-

tageous to the beneficiaries or would offer an expedient solution to problems of trust management. (*Traung, supra,* at pp. 833-834; Rest.2d Trusts, *supra,* § 167, com. (b).)

It has been suggested that the vacancy on the committee created a change in circumstances which necessitated Marie's conditional appointment. ▆ However, in order for a change in circumstances to justify deviation, there must be a showing that the change was unforseen by the trustor and that compliance with the trust would defeat its main purposes. (2 Scott, Trusts, *supra,* § 167, p. 1268; *Stanton, supra,* at p. 770.) In the instant case, there is no reason to believe that Marie's nomination to the committee was unforeseen or that her unconditional appointment would have defeated the purposes of the trust. The trust did not by its terms forbid Marie's appointment, and no one suggests that it would have been illegal.[4]

▆ Since any person, including a beneficiary, may serve as trustee or hold trust powers (Rest.2d Trusts, *supra,* § 99, subd. 1, § 185, com. (a)), the fact that Marie might have owed fiduciary obligations to the other beneficiaries would not have invalidated her appointment or rendered voidable her exercise of trust powers. ▆ Had she breached her obligations or abused her discretion, the beneficiaries would have been protected, for "A discretionary power conferred upon a trustee may be controlled by the proper court if not reasonably exercised." (*Estate of Traung, supra,* 207 Cal.App.2d at p. 834; see Rest.2d Trusts, *supra,* § 185.) Moreover, since Crocker Bank as trustee had the ultimate authority to determine the amounts to be paid to the Eckstrom children, Marie's standing on the committee would have given her no particular personal advantage and would have created no substantial conflict of interest. ▆ Therefore, it is apparent that the purported conditional or limited appointment was totally unnecessary and consequently constituted an unlawful deviation from the terms of the trust.

It should also be pointed out that Marie's conditional appointment has already resulted in protracted litigation between the parties, substantial delays in administering the trust, and wasteful expenditures of trust funds

---

[4]The trial court's conclusion that the nomination agreement was void was based upon its findings that the trustor's primary purpose in creating the trust was charitable, and that the trustor did not intend to vest control of the committee in his children, but in a disinterested majority. However, since no extrinsic evidence was admitted at trial, the trial court's findings were necessarily based upon its interpretation of the trust instruments and accordingly are not binding upon this court. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) Had the trustor intended to disqualify Marie from serving as a member of the committee, he could easily have so declared in the trust instrument; instead he left to the committee's sole discretion the choice of a successor member. We conclude that the evidence fails to support the finding that the trustor intended only a disinterested majority should serve the trust committee.

for litigation expense. Moreover, it is likely that further disputes, delays and expenses would arise if the appointment remained in effect, for under the terms of the nomination agreement, every time that Thomas or Marie desire additional funds under the trust distress clause, a temporary vacancy would occur on the committee which must be filled either by agreement between the other two members or by the superior court. Judging from the inability of Thomas and the Crocker Bank on at least two prior occasions to agree upon an appropriate appointee, the parties would frequently initiate judicial proceedings to obtain a "pro tempore" member for the committee. There is no justification for requiring the parties to undergo continual litigation, delay and expense merely to obtain an assessment of financial needs which the trustee, in its sole discretion, need not accept. Surely the trustor would not have sanctioned such a procedure, which could seriously delay the payment of distress funds to his children and which could deplete the trust assets through recurring litigation expense.

Accordingly, we hold that Marie's conditional appointment to the trust committee was void as an unlawful deviation from the terms of the trust.[5] The trial court, having also concluded that the appointment was invalid, designated Joseph W. Vickers to serve in place of Marie, since Thomas and the trustee were unable to agree upon a suitable successor. However, Mr. Vickers' appointment may have been premised upon the incorrect assumption that Marie was totally disqualified under the terms of the trust from serving on the committee. Since neither the trust nor general principles of law prohibit Marie from serving as a trust adviser or from holding and exercising trust powers, Marie was eligible to serve on the committee, and Thomas and the trustee should be given the opportunity to accept her as a committee member, without the restrictions imposed by the nomination agreement, through the process of a valid appointment. However, we cannot accept appellants' contention that Marie's appointment was valid, and that only the terms of the nomination agreement are void and unenforceable. Since the trustee's consent to her appointment was expressly conditioned upon the restrictions set forth in the agreement, its consent must be deemed revoked by the invalidity of that agreement.

Our decision in this respect is not intended to suggest who should be appointed as the successor committeeman as that lies wholly within the

---

[5]Our decision does not, of course, affect the status of prior charitable distributions made, or other actions taken, by the committee while Marie served as a *de facto* member. The trial court properly approved these distributions as valid, for although Marie's appointment was void, her ostensible authority to act upon the committee has bound the beneficiaries and the trust estate to the same extent as were she a *bona fide* member thereof.

discretion of the remaining committeemen and, failing to reach an agreement, then with the court.

 Article VI, paragraph 4, of the Declaration of Trust provides that the trustee is entitled to reasonable compensation for any unusual or extraordinary services which it renders. The trial court found that the bank, as trustee, had rendered such services in attempting to resolve the controversy without litigation and in prosecuting this action, it found the reasonable value of these services to be $3,500 (the trustee had requested $7,500) and awarded that amount to it, plus $93.10 as reimbursement of sums which it had disbursed.

Article IV, paragraph 18 of the Declaration of Trust provides that the trustee "shall pay out of principal or income as it may elect, or partially out of each, in such shares as it may determine . . . attorneys' fees, . . . and other expenses incurred in the administration or protection of this trust . . . ." The trial court found that counsel for the trustee had been engaged to prosecute this action in the course of the administration and protection of the trust. It found that the reasonable value of the services which they had rendered was $10,000 (the trustee had requested $12,500) and, pursuant to the provision just set forth, awarded that amount as attorneys' fees. Thomas and Marie conceded that the trust authorized the above payments and offered no evidence on the subject of the services of the trustee and its counsel. Our review of the record indicates that there is substantial evidence to support the trial court's findings. There is no merit in Thomas' and Marie's unsubstantiated complaint that the amounts awarded by the trial court were excessive.

Article II of the Amendment to the Declaration of Trust provides that the members of the committee are entitled to a reasonable compensation "for their services in carrying out the special duties which may be required of them under paragraphs 7, 8 and 9 of said Article IX" (see fn. 1, *ante*) of the Declaration. Thomas and Marie applied for compensation for themselves[6] and for reimbursement, from the trust, of their attorneys' fees.

---

[6] Although it is not entirely clear from the record, it appears that the services for which this request was made were composed, in whole or in part, of Thomas and Marie's activities in connection with the present litigation. The trustee argued that these activities did not fall within the category of duties required by paragraphs 7, 8 or 9 of article IX and, hence, were not compensable pursuant to the Amendment to the Declaration. The trial court appears to have accepted the trustee's contention since it limited its finding of services rendered to those which were concerned with the selection, pursuant to paragraph 7 of article IX, of specific charitable institutions as recipients of principal distributions. The trial court was clearly correct; the trust documents nowhere provide compensation for "services" such as this internecine litigation among those entrusted with the management of the trust.

The trial court, however, refused to award them either. As to Marie, since the court had held that she was not a member of the committee, it concluded that she was not entitled to compensation for her services as a committee member. As to Thomas, the court found that he had rendered services as a committee member in determining the charities which were to receive principal distributions. It suggested that $40 per hour was a reasonable rate of compensation. It held, however, that the claim for compensation was premature since Thomas had not complied with the implicit requirement of the Declaration of Trust that he present a demand to the trustee for compensation for these services. ■■■ We fully agree that such claims should be presented to the trustee before a judicial determination and award is sought. ■■■ However, even though Marie's appointment was void, she did serve upon the committee for 10 years as a *de facto* member, performing in good faith services to the trust for which she should be reimbursed. (90 C.J.S., Trusts, § 396, p. 721.) Accordingly, we believe that *both* Thomas and Marie are entitled to compensation for services as committee members pursuant to paragraphs 7, 8 and 9 of article IX and that *both* should submit their claims for compensation to the trustee.

■■■ Finally, the trial court found that neither the Declaration of Trust nor the subsequent amendment contained any provision for reimbursement of committee members for legal fees such as those incurred in the instant litigation. It therefore concluded that Thomas and Marie's counsel were not entitled to compensation from the trust estate for services rendered to Thomas and Marie during the present controversy. We concur. In the light of the circumstances of this case and in the absence of an express provision in the trust documents, we do not believe that authority for the payment of such counsel fees can be reasonably implied to the end of requiring the trust (and, ultimately, the charitable beneficiaries) to bear such expense.

The judgment is affirmed insofar as it declares Marie's appointment to be void, awards fees to the trustee and its counsel, reimburses the trustee for sums disbursed by it, and approves the actions of the trustee in dis-tributing funds to the charitable institutions designated by the committee. The judgment is reversed to the extent it denies Thomas or Marie compensation as committee members and appoints John W. Vickers to the trust committee, and the cause is remanded to the trial court with directions to amend the findings of fact and conclusions of law and to enter judgment

in accordance with the views herein expressed. The parties shall bear their own costs on appeal.

Mosk, Acting C. J., McComb, J., and Schweitzer, J.,* concurred.

**SULLIVAN, J.**—I agree that the judgment should be affirmed insofar as it awards fees to the trustee and its counsel, reimburses the trustee for sums disbursed by it, and approves the actions of the trustee in distributing funds to the charitable institutions designated by the committee; I concur in the judgment and the opinion of the majority to that extent. In all other respects I dissent.

The fundamental issue before us can be simply stated: Are there any restraints on the power of the members of a trust advisory committee to select a successor member which preclude them from appointing a successor subject to the condition that he not participate in a matter as to which he has a direct financial interest? The majority, indiscriminately applying rules governing *trustees* to *members of advisory committees,* conclude that restraints do exist which render such a conditional appointment invalid. In so doing they needlessly frustrate the salutary attempt of the trustee to accommodate within trust purposes the desire of the trustor's children to have Marie participate along with Thomas on the advisory committee and take part in the advancement of the charitable aims of the trust.

It is my view, after an examination of the Declaration of Trust and a review of relevant legal principles, that there are no restraints preventing the conditional appointment of Marie to the committee. I therefore conclude that Marie Eckstrom was validly appointed to the committee and is subject to the restrictions upon her authority to act imposed by the nomination agreement—the instrument by which her position on the committee was procured and to which she was a party.

I begin with a consideration of the Declaration of Trust. The trustor, rather than himself naming those who should succeed to vacancies on the committee, delegated this responsibility to the committee members themselves. There is nothing in the initial declaration or the later amendment which expressly places limitations upon the manner in which a successor is to be selected or upon the class from which the selection is to be made. The only express limits on this otherwise complete power to choose who should fill vacancies are those contained in article IX, paragraph 7, which requires that both remaining members agree on the replacement and

*Assigned by the Chairman of the Judicial Council.

provides that, in the absence of such agreement, the appointment be made by a court of competent jurisdiction.

Nor can I discover anything in the trustor's general dispositive design indicating either expressly or by reasonable implication that the qualified appointment of Marie to the committee would be incompatible with the intention of the trustor. The trial court based its conclusion that the nomination agreement was in excess of the trustee's and Thomas' authority on two findings as to the trustor's presumed intention. As set forth in the majority opinion these findings were *first,* that his primary purpose in creating the trust was charitable, and *second,* that he did not intend to vest control of the committee in his children, but in a disinterested majority. The first of these findings is in my view (and also in the view of the majority as I apprehend it) not supported by the evidence. The second lacks support in the evidence to the extent that it contemplates "control" for the purpose of carrying out the charitable aims of the trust, but it is in my view wholly supported to the extent that it contemplates "control" over applications under the distress clause.[1] Thus, to the extent that the second finding is supported in the evidence it is fully consistent with the qualified appointment of Marie.

A fair reading of the Declaration of Trust and the amendment demonstrates that no single purpose was "primary" in the mind of the trustor. Rather, he had several objectives which he tried to effectuate through the single trust here involved. It is apparent that he desired to benefit two broad areas of charitable endeavor, leaving the periodic selection to the committee so as to insure that a worthy instiution would be selected. He also desired to provide for his children's "reasonable support, care, and comfort" but not to subsidize an unduly luxurious or indulgent life style at the expense of the charitable remaindermen.[2] To accommodate these

---

[1] It is the view of the majority that this second finding is unsupported even as it relates to the distress clause. (See fn. 4, *ante,* and accompanying text.) I address myself to this view in the next paragraph.

[2] In 1951, when the power to invade the principal on behalf of the income beneficiaries was added to the trust, there was substantial uncertainty as to the effect such a provision would have upon the deduction from the settlor's gross estate of the charitable remainder under Internal Revenue Code section 812(d) (now I.R.C. § 2055). (See *Ithaca Trust Co.* v. *United States* (1929) 279 U.S. 151 [73 L.Ed. 647, 49 S.Ct. 291]; *Merchants Bank* v. *Commissioner* (1943) 320 U.S. 256 [88 L.Ed. 35, 64 S.Ct. 108]; *Henslee* v. *Union Planters Bank* (1949) 335 U.S. 595 [93 L.Ed. 259, 69 S.Ct. 290].) In addition, the possession of some power to direct the invasion of principal by the beneficiary raised the specter of inclusion of the trust corpus in the beneficiaries' gross estate. (See Brown, *Tax Hazards in Hidden Powers of Appointment* (1953) 28 L.A. Bar Bull. 323.) The operative phrase "reasonable support, care, and comfort" may well have been an attempt to avoid these tax consequences by providing an external ascertainable standard by which the discretion of the trustee was to be controlled. The use of the committee device may have been intended to insulate the bene-

somewhat antagonistic desires, he again relied upon the committee for a sympathetic but unbiased estimate of his children's actual need for increased payments. That he desired a degree of objectivity in the assessment of need is manifest in the simple fact of his entrusting the responsibility to the committee as initially composed. Had he intended the trustee to act on solely the beneficiaries' own idiosyncratic views of their financial status, there was no need for the committee at all. Thus, there is nothing in the trust documents themselves which either expressly or by implication prohibits the remaining committee members from conditioning the appointment of a new member upon his acceptance of a limited role when this condition is imposed in order to preserve a balanced membership and to prevent domination of the committee by the income beneficiaries in matters as to which they have a direct financial interest.

It remains to determine whether any legal principles preclude the appointment of a committee member with restricted powers. The parties have referred us to no cases deciding or discussing the precise question here presented and my own research has disclosed none.[3] However, I am satis-

---

ficiary, Thomas, from "direct" possession of a power to direct invasion of the principal for his own benefit. In any event, the trustor was obviously sensitive to the risks of adverse tax treatment and endeavored to minimize them while still obtaining the additional flexibility a discretionary power to invade afforded in his provisions for the welfare of his children. While certainly not controlling, this is some evidence that the exclusion of Marie from participating in the determination of her own or her brother's need for principal payments was entirely compatible with the trustor's intentions.

[3]The cases cited by the parties are not particularly helpful. The Eckstroms rely upon *Estate of Bodger* (1955) 130 Cal.App.2d 416 [279 P.2d 61] for the proposition that a trust is a contract, the terms of which cannot be modified by the unilateral action of the trustee or of a court. The other parties do not dispute that the trustee is bound by the Declaration of Trust, but this sheds little light upon the question of whether the action of the trustee and Thomas as committee members should be considered such a "unilateral alteration." In addition, the Eckstroms refer us to 49 Cal.Jur.2d 32 for the proposition that "Trustees are bound to comply strictly with the directions contained in the trust instrument defining the extent and limits of their authority and the nature of their powers and duties." No authority is cited for their contention that this "rule of law" is "likewise applicable to members of a trust committee."

The Attorney General cites *Duncan* v. *Dormer* (1928) 94 Cal.App. 218 [270 P. 1003] and *Huntoon* v. *Southern T. & C. Bank* (1930) 107 Cal.App. 121 [290 P. 86] in support of the proposition that the trust instrument is the sole source of the committee members' authority and that in appointing Marie to a limited-status membership, Thomas and the trustee were acting contrary to it. Neither case is persuasive authority. *Duncan* stands for the principle that a trustee is personally liable on contracts which are not authorized by the trust instrument. *Huntoon* holds simply that a trustee receives his authority to sell the trust res from the trust instrument. It is unquestioned that the primary source of power of the trustee qua trustee and as committee member is the Declaration of Trust; the question, however, is whether the particular action here involved is consistent with that document's abbreviated delegation of authority to appoint new committee members. That is, in the absence of clear authorization or

fied that there are neither specific rules nor general notions of public policy which prohibit the appointment of a committee member subject to the conditions in the nomination agreement which we here consider.

In spite of the strenuous efforts of the majority to obscure it,[4] there nevertheless exists a clear distinction between (1) the members of a committee charged with providing advice to or making decisions binding upon a trustee and (2) the trustee himself.[5] Title to the trust corpus reposes in the trustee but not in the committee members. Accordingly, no tenable analogy can be drawn to the rule in some jurisdictions that a successor trustee may not be appointed to serve as to less than all of the trust property or all of the trust functions.[6] This rule reflects the need for a definite repository of the title to the trust property and, hence, does not apply to the appointment of committee members who are disqualified from acting as to certain matters. (Cf. *Warner* v. *First National Bank of Minneapolis, supra,* 236 F.2d 853, 860.)

Second, there appears to be several good reasons for the insistence by the trustee-committeeman that any determinations of distress be made by a committee the majority of whose members are relatively impartial as between the income beneficiaries and the charitable remaindermen.[7]

---

prohibtion, are there general principles which indicate that the action is or is not appropriate?

Finally, the trustee relies on *Gilbert* v. *Penfield* (1899) 124 Cal. 234 [56 P. 1107] and *Craven* v. *Dominguez Estate Co.* (1925) 72 Cal.App. 713 [237 P. 821] for the rule that a trustee has all the authority necessary to carry out the purposes of the trust and may adopt measures and do acts which are reasonable and proper to effectuate the instrument even though not directly conferred on him, if they are implied in its general directions. No distinction is made between the trustee's role as trustee and as committeeman.

[4]In the course of pursuing its analogy between cotrustees and committee members the majority quotes from a well-written Note on the subject of trust advisers. (Note, *Trust Advisers* (1965) 78 Harv.L.Rev. 1230, 1231.) However, the majority fails to point out that in the same paragraph of the Note from which it quotes the author goes on to observe: "However, courts have recognized that advisers are *not* cotrustees when such a classification would have undesirable substantive effects [citing *Warner* v. *First National Bank of Minneapolis* (8th Cir. 1956) 236 F.2d 853, cert. den. 352 U.S. 927 [1 L.Ed.2d 162, 77 S.Ct. 226], where it was held that an adviser was not a trustee for the purpose of beginning the running of the statute of limitations]."

[5]The literature regarding such committee is not extensive. For a discussion of the trust committee in the context of providing investment direction see Note, *Trust Advisers, supra,* 78 Harv.L.Rev. 1230.

[6]In any event, this does not appear to be the general rule. See 2 Scott, Trusts (3d ed. 1967) § 185, p. 1488.

[7]A trustee, of course, owes a duty of impartiality to all who have an interest in the trust and must deal impartially among the several beneficiaries. (See 2 Scott, Trusts, *supra,* § 183, pp. 1471-1472; 1 Nossaman, Trust Administration and Taxation (2d ed. rev.) § 27.12.)

Those who have some degree of advisory or directive power over a trustee may be cotrustees, beneficiaries or independent third parties. If they are trustees or third parties, they hold these powers as fiduciaries, owing a fiduciary's responsibility to the trust beneficiaries in the exercise of the power. If, however, the power holders are themselves beneficiaries they usually, though not necessarily, hold it for their own benefit. (See 2 Scott, Trusts, *supra,* § 185, pp. 1474-1479.) When the holder of the power is a fiduciary, the trustee may properly refuse to act upon his direction if the trustee knows that the power holder is violating his duty to the beneficiaries in giving that direction. (2 Scott, Trusts, *supra,* pp. 1481-1484.)

Prior to Marie's appointment it was clear that Thomas held his power to join in declaring the distress of Marie or himself as a fiduciary since he held it for Marie's benefit as well as for his own. Were Marie to have been appointed without the conditions imposed by the nomination agreement, it is far from clear that the power would have continued to be held by Thomas and Marie in a fiduciary capacity. Since the committee would have been then composed of a majority apparently holding their power solely for their own benefit, the trustee would have become subject to a less qualified obligation to act upon its declarations.[8] Under those circumstances, the trustee could refuse to act upon a declaration of need only were it convinced it was made in bad faith. In so doing it would almost certainly provoke a lawsuit by Thomas or Marie charging it with abuse of discretion.

On the other hand, were the trustee to have acquiesced in the appointment of a committee member who used that office for her own financial benefit and thereby depleted the corpus to an extent greater than would otherwise have occurred, it would risk liability to the charitable beneficiaries represented by the Attorney General.[9]

---

[8]Nor could the trustee avoid this duty because it had discretion as to the amount of payments to be made. (The amendment provides: ". . . if said payments . . . shall be insufficient in the discretion of the COMMITTEE . . . to provide for the reasonable support, care, and comfort of either of them, the TRUSTEE *may pay* to such beneficiary, ·or apply for his or her benefit, *so much* of the principal *as the* TRUSTEE may deem proper or necessary for that purpose.") (Italics added.) This language does not confer on the trustee an absolute discretion, even though article IV, paragraph 15 of the Declaration of Trust provides that "[u]nless specifically limited, all discretions conferred upon the Trustee shall be absolute, . . ." The actions of the Trustee remain subject to review by the court for abuse of discretion. (Civ. Code, § 2269; 1 Nossaman, *supra,* § 28.18; 3 Scott, Trusts, *supra,* § 187.2, pp. 1514-1515; *Estate of Ferrall* (1953) 41 Cal.2d 166, 173-174 [258 P.2d 1009].)

[9]See Government Code sections 12580-12597. These statutes "were enacted in recognition of the problem of providing adequate supervision and enforcement of charitable trusts [fn. omitted]. Beneficiaries of a charitable trust, unlike beneficiaries

To some extent this dilemma was built into the trust by the imprecision and elaborateness of the decision-making mechanism: a three-member committee to determine, in its discretion, the children's need for additional payments, and a residual discretion lodged in the trustee to determine how much it was "proper and necessary" to pay out. Acting in the best interests of the trust, the trustee (or a committee member who was not the trustee) could sensibly refuse to accept an appointment to the committee which could only aggravate the risk of dispute and expensive litigation.

Finally, the only parties whose interests could be adversely affected by the *conditional* appointment (Thomas and Marie) freely assented to it. Absent either some dishonesty on the part of the trustee in inducing their assent, or some conflict between the agreement itself and the trustor's intention or an extrinsic rule of law, I see no reason to strike down the appointment.

For the foregoing reasons I am of the view that Marie was validly appointed to the committee and is now a member of it; that she has been and remains subject to the terms, conditions and restrictions of the nomination agreement; that pursuant thereto she is disqualified to act as a member of the committee with regard to the present, and any future, requests for additional payments under the distress clause; and that therefore a *temporary* vacancy now exists on the committee which should be filled by the trustee and Thomas Eckstrom and, if they are unable to agree, by the Los Angeles County Superior Court.

I feel it is my duty to make some brief observations concerning the practical result of the decision reached by the majority. It is asserted that the conditional appointment of Marie has caused litigation, delay, and expense—and that if it remained in effect more of the same would be forthcoming because every application under the distress clause would cause a temporary vacancy to be filled in an atmosphere of dispute and litigation. It is manifest, however, that past litigation, delay, and expense has been caused wholly by the wilful refusal of Thomas and Marie to abide by the terms of the agreement[10] which as long ago as August 1958

of a private trust, are ordinarily indefinite and therefore unable to enforce the trust in their own behalf [citations]. Since there is usually no one willing to assume the burdens of a legal action, or who could properly represent the interests of the trust or the public, the Attorney General has been empowered to oversee charities as the representative of the public, a practice having its origin in the early common law. [Citation.]" (*Holt* v. *College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 754 [40 Cal.Rptr. 244, 394 P.2d 932]. See also Howland, *The History of the Supervision of Charitable Trusts and Corporations in California* (1966) 13 U.C.L.A. L.Rev. 1029.)

[10]No claim is made that this was not the free and voluntary act of two mature individuals who were desirous of placing Marie on the committee but were nevertheless sensitive to the conflict of interest with which she might be otherwise faced.

they executed with the trustee so as to provide for the appointment of Marie to the committee subject to the conditions heretofore discussed.[11] It is also manifest that if Marie's appointment were upheld all incentive for future litigation would be removed because the possibility of family domination of the committee would be negated. It is not at all difficult to perceive behind all of this the expertise of a careful and conscientious trustee which sought to accommodate itself to the wishes of the children without frustrating the basic objectives of the trustor.

Compare with this the situation which the majority by their decision now bring about. The parties are told that although Marie's conditional appointment is invalid, her *unconditional* appointment would be valid "[s]ince neither the trust nor general principles of law prohibit Marie from serving as a trust adviser or from holding and exercising trust powers. . . ." In addition the trustee is told (in fn. 4 of the majority opinion and accompanying text) that its concern to preserve a disinterested majority on the committee has been misguided and that Marie's status as a beneficiary under the distress clause in no way disqualifies her from serving on the committee. The next step is clear: Marie will be nominated by Thomas for unconditional appointment, and the trustee—if in the face of the majority opinion it should nevertheless conclude that refusal to consent still lies within the province of its discretion—will be obliged to support that conviction in the superior court. That, of course, is only the beginning, for if Marie is finally appointed the trustee will find itself in the uncomfortable position which I have suggested above in the text accompanying footnotes 8 and 9. The prospect of interminable litigation looms large indeed.

I would uphold the conditional appointment of Marie to the trust advisory committee.

Peters, J., and Wood, J.,* concurred.

---

[11]Until 1966, for over eight years, Thomas and Marie abided by the agreement. They then called a meeting of the trustee's advisory committee to pass upon their applications under the distress clause for a payment to each of them of $50,000, and for future annual payments of $20,000, in addition to all other sums payable to them. The implications of conflict of interest which Marie thus faced are obvious. Her violation of her obligations under the agreement wherein she "recognizes that she would be disqualified to sit or act" is clear. Quite properly the trustee refused to participate in such an arrangement which presented the grave danger that such control of the committee might inordinately invade the trust to the prejudice of the remaindermen —the very danger the agreement had sought to avoid.

*Assigned by the Chairman of the Judicial Council.