(634 P.2d 1152)

No. 52,344

In re the Estate of Charles C. Hulme, Deceased.

Opinion filed October 22, 1981.

*Raymond L. Dahlberg,* of Great Bend, for the appellant.

*Robert P. Keenan,* of Keenan, Mauch & Keenan, P.A., of Great Bend, for the appellee.

Before FOTH, C.J., ABBOTT and SWINEHART, JJ.

FOTH, C.J.: This is a dispute over who are the trustees of The Charles Hulme Foundation, a charitable trust. Trustees Wayne H. Bentley and H. Lee Turner appeal from a decision that Virgil E. Belford, Jr. was validly appointed to serve with them as a third trustee. That question depends on when trustee Bentley's appointment became effective.

On July 1, 1965, at Great Bend, Kansas, Charles C. Hulme created the foundation by the execution of an irrevocable inter vivos trust agreement in which he designated himself, H. Lee Turner and Britt Spaugh as trustees. According to Section III of the trust instrument, the trustees were given the right to designate, by written instrument, both "additional" and "successor" trustees. The pertinent provisions were:

"Any trustee hereunder may by written instrument, signed and acknowledged, resign his office. The number of trustees shall be at all times not less than two, and whenever for any reason the number is reduced to one, there shall be, and at any other time there may be, appointed one or more additional trustees. Appointment shall be made by the trustee or trustees for the time being in office by written instruments signed and acknowledged; and successor trustees may be selected in advance, to take office on the death, retirement or incapacity of a trustee, by written instruments signed and acknowledged by the trustees in office prior to the occurrence of the vacancy. Any succeeding or additional trustee shall, upon his acceptance of the office by written instrument signed and acknowledged, have the same powers, rights and duties, and the same title to the trust estate jointly with

the surviving or remaining trustee or trustees as if originally appointed. A corporation may be appointed a successor or additional trustee."

On June 5, 1967, shortly after the death of trustee Spaugh, the surviving trustees, Hulme and Turner, appointed Wayne H. Bentley as an "additional trustee in the event Charles C. Hulme and H. Lee Turner disagree as to the discharge of the powers of the trustees," and as "successor trustee to succeed either Charles C. Hulme or H. Lee Turner in case of their resignation, disability, incapacity or death." Bentley duly accepted the appointment in writing the same day.

On June 27, 1973, at the request of settlor-trustee Hulme, Virgil E. Belford, Jr., drafted an instrument appointing Belford as successor trustee to succeed either Hulme, Bentley or Turner. This instrument was signed by Hulme on June 29, 1973, in his hospital room at the Central Kansas Medical Center. On July 19, 1973, the same instrument was submitted to Wayne Bentley for his signature. In the presence of Hulme and at his request, Wayne Bentley signed the instrument. Insofar as the record reflects, this was the first time Bentley had purported to take any action in the capacity of trustee.

After Bentley and Hulme signed the instrument Belford called trustee Turner to advise him that an instrument appointing Belford as successor trustee had been signed by Hulme and Bentley and offered to deliver the instrument to Turner so that he might sign it. Turner advised Belford that he did not want to see the document.

On May 15, 1975, Hulme died testate, devising and bequeathing all his property to the Foundation. Belford and Ed Whaley were named co-executors and served in that capacity for the next five years.

On April 15, 1980, trustees Turner and Bentley petitioned the court for an order directing the executors of the estate of Charles C. Hulme to make final accounting and to assign the estate to the persons entitled thereto. Thereafter the executors filed their petition for final settlement. An additional petition was filed by Belford asking the court to confirm and appoint him as a successor trustee to Hulme, to serve with Turner and Bentley.

After hearing the district court ruled that Wayne Bentley had been appointed to replace Britt Spaugh as trustee, and assumed full power and duty as a trustee on June 5, 1967. Consequently,

the court found that trustee Hulme and trustee Bentley, comprising a majority of the trustees of the foundation, had authority on July 19, 1973, to appoint Belford as a successor trustee. Therefore, upon Charles C. Hulme's death on May 15, 1975, Belford succeeded him as the third trustee. It is from this order the present appeal is taken.

As may be seen, the validity of Belford's appointment depends upon Bentley's status on July 19, 1973, the date Bentley and Hulme purported to appoint Belford. If Bentley was not a trustee as that time, then there was only one valid signature on the appointing document, *i.e.,* Hulme's. Under the trust instrument if there were only two trustees, the concurrence of both was required; if more than two, then the concurrence of a majority.

In the journal entry the trial court found:

"1. That the original trustees appointed pursuant to the trust instrument were Charles C. Hulme, H. Lee Turner and Britt Spaugh. That following the death of Britt Spaugh, Wayne Bentley was appointed as replacement trustee, whose consent to serve was executed June 5, 1967."

This finding, to the extent it makes Bentley a successor to Spaugh, flies in the face of the language of the appointing instrument, the essential terms of which are quoted above. The instrument by its terms appointed Bentley only on the happening of one of two future events, *i.e.,* as "additional" trustee if Hulme and Turner disagreed, or as "successor" trustee to either Hulme or Turner if either should cease to act. There is nothing to suggest that Bentley should be a successor to Spaugh, even though Spaugh had died before the appointment was made. There being no evidence to support it, this finding of fact cannot stand.

The conclusion necessary to support the judgment, that Bentley's appointment became effective prior to the appointment of Belford, could be supported by other theories, but we cannot find support for them either. First, in oral comments the trial judge indicated as controlling the trust language which says that a successor or additional trustee shall have full powers upon acceptance in writing, duly acknowledged. The problem with that is the appointment of a successor "in advance" is specifically authorized, to take effect in the future. That is precisely what the instrument in question did: it appointed Bentley as a successor to either Hulme or Turner. Obviously such an appointment could not be effective while both Hulme and Turner were acting, despite Bentley's acceptance.

Second, it could be argued that Bentley's appointment as an "additional" trustee became effective because the condition precedent had been fulfilled, *i.e.*, Hulme and Turner disagreed as to the operation of the trust. There was, however, no evidence of any disagreement, at least before the appointment of Belford. Turner, who might have known about any such disagreement, was not called to testify. His refusal to join in the appointment of Belford, if that is evidence of disagreement, came only after Hulme and Bentley had purported to act. The trial court, in the absence of evidence, made no finding on the issue of disagreement.

Third, it could be argued that making the appointment of the "additional" trustee conditional was unauthorized by the trust agreement and therefore the condition was void. The parties cite us no authority on the effect of an unauthorized condition. The only analogous case we find indicates that such an attempt makes the *appointment* void, rather than the condition. *Crocker-Citizens National Bank v. Younger,* 4 Cal. 3d 202, 93 Cal. Rptr. 214, 481 P.2d 222 (1971).

There the trust gave a limited annuity to each of the settlor's two children, with the balance to go to charity. A three-person advisory committee was to designate the charitable recipients and also to pass on any request by the children for additional funds under a "distress" clause. Upon the death of one of the advisory committee members, the other two appointed the testator's daughter as successor, but with the agreed condition that if either child should make a request under the "distress" clause she would be disqualified and a temporary member would be appointed to act in her place on the request.

The majority of the court treated the committee members as trustees. It held the limitation on the successor's authority beyond the powers granted by the trust instrument, relying on the Restatement's axiom:

" 'A power to appoint trustees conferred by the terms of the trust can be exercised only under the circumstances and in the manner provided by the terms of the trust.' (Rest.2d Trusts, § 108, com. (f), at p. 239.)" 4 Cal. 3d at 211.

Finding the conditional appointment was void, the court held that a vacancy existed which could be filled by the two remaining committee members.

Under the rationale of the majority in that case, the imposition of an unauthorized condition precedent to the appointment of

Bentley as an "additional" trustee rendered the appointment void. It did not authorize the court to excise the condition, which would require the unwarranted assumption that Hulme and Turner would have appointed him unconditionally had they known the condition was invalid. The problem is analogous to determining severability where a portion of a legislative act is held unconstitutional. See *Gumbhir v. Kansas State Board of Pharmacy,* 228 Kan. 579, 618 P.2d 837 (1980).

The dissenters in *Crocker,* noting the absence of any *prohibition* in the trust instrument to a conditional appointment, concluded the condition was reasonable and enforceable. Under that rationale, the condition was good but Bentley could not become an additional trustee until there was a disagreement between Hulme and Turner. As previously noted, there was no evidence or finding of any disagreement.

Although there is no evidence of a disagreement between Hulme and Turner prior to the attempted appointment of Belford, there is clear evidence of such disagreement since that time. Turner opposed the appointment of Belford when it was known to him, continued to oppose it in the litigation in the district court, and has gone so far as to take this appeal. His intent to defeat this purpose of the settlor is clear.

Bentley's position is anomalous. He testified he considered himself a full trustee at all times since his appointment. He joined with settlor-trustee Hulme in the appointment of Belford, assuming he had the power to act. Now that Hulme is dead he repudiates his own action and even joins in this appeal. The manner in which this litigation will promote the desires and charitable purposes of the settlor is difficult to fathom.

There is no doubt that Hulme, the settlor, wanted Belford to be a successor trustee. However, as trustee Hulme was as bound by the terms of the trust instrument as any other trustee. The appointment of an additional or successor trustee had to be accomplished in accordance with the authority granted by the trust instrument. When the appointment of Belford was made, Bentley's authority to act, either as an additional trustee or as a successor trustee, had not yet ripened. The result was that the purported appointment of Belford was a nullity, and the trial court erred in holding otherwise.

Reversed.