[Civ. No. 4323.   Second Appellate District, Division One.—May 21, 1925.]

## EMMA E. CRAVEN, Respondent, v. DOMINGUEZ ESTATE COMPANY (a Corporation), Defendant; GEORGE F. CARSON et al., Appellants.

[1] TRUSTS—REAL PROPERTY—EXPRESS TRUST TO SELL.—An express trust to sell real property and dispose of the proceeds of such sale is authorized by section 857 of the Civil Code.

[2] ID.—ESTATE OF TRUSTEE—RIGHTS OF BENEFICIARY.—As a general rule, every express trust in real property, if valid as such in its creation, vests the whole estate in the trustee, subject only to the execution of the trust, and the beneficiary takes no estate or interest in the property, but may enforce the performance of the trust.

[3] ID.—INTEREST OF BENEFICIARY IN PROCEEDS.—As against the trustee under an express trust to sell real property and dispose of the proceeds thereof, and as against those lawfully claiming under the trustee, the beneficiary has no interest in the property itself, but only in the proceeds thereof after the property has been sold by the trustee.

[4] ID.—GRANT DEED—UNRECORDED TRUST—CONVEYANCES BY TRUSTOR —NOTICE OF TRUST.—Where an owner of real property, by a grant deed, conveys the property to another, and the latter thereupon executes a declaration of trust to sell the property and dispose of the proceeds of such sale in a stated manner, the major portion going to the former owner, and such declaration of trust expressly provides that all deeds, contracts of sale, and other instruments affecting the trust property shall be executed solely by the trustee, any attempted transfer of the trust property by the trustor, either in the form of a deed or a lease, will not convey any interest in the trust property, as against the trustee or its grantee; and where such deed by the trustor to the trustee is absolute in form, and is recorded, the said declaration of trust (although not recorded) is binding upon the trustor, as principal beneficiary, and all persons claiming under said beneficiary, whether they had actual notice of it or not.

[5] ID.—IMPLIED POWERS OF TRUSTEE.—A trustee has all the authority necessary to carry out the objects and purposes of the trust, and this is true even though the instrument creating the trust may not directly confer upon him such power.

3.  See 25 **Cal. Jur.** 316.

[6] ID. — ATTEMPTED CONVEYANCE BY TRUSTOR AND BENEFICIARY.—
Where the absolute title, both legal and equitable, to real property
is vested in the trustee, and it is to have the care and custody of
the property, through its agent, and is to sell the same and dispose
of the proceeds in a specified manner, the major portion thereof
going to the trustor, as beneficiary, something more than a simple
or dry trust in the property is created, and the trustee holds an
estate in the property adequate to the execution of the trust; and
under such trust the trustor, although the principal beneficiary, has
no interest in the property which he can transfer by deed or other-
wise, and a lease of the trust property executed by him will vest
no interest therein as against the trustee, or against a vendee of
the trustee, even though such vendee takes with notice of the lease.

[7] ID.—SALE BY TRUSTEE—ATTEMPTED RATIFICATION OF PRIOR LEASE.
After said trustee, pursuant to the terms and conditions of the
trust, has sold and conveyed a portion of the trust property, the
absolute title thereto vested in the vendee, and the trustee had no
power thereafter to ratify a lease of the property which had been
executed by the trustor, and principal beneficiary, prior to said sale.

---

(1) 39 **Cyc.**, p. 39, n. 8 New, p. 201, n. 78.    (2) 39 **Cyc.**, p. 208,
n. 26, p. 209, n. 27.    (3) 39 **Cyc.**, p. 217, n. 59, p. 219, n. 64.
(4) 39 **Cyc.**, p. 207, n. 22, p. 212, n. 36, p. 237, n. 65.    (5) 39 **Cyc.**,
p. 79, n. 40, p. 219, n. 68, p. 245, n. 12, 13, p. 292, n. 96.    (6) 39
**Cyc.**, p. 237, n. 65 New.    (7) 39 **Cyc.**, p. 237, n. 65 New.

APPEAL from a judgment of the Superior Court
of Los Angeles County. Charles S. Burnell, Judge. Af-
firmed.

The facts are stated in the opinion of the court.

Joe Crail and Harold C. Morton for Appellants.

Goodwin & Morgrage for Respondent.

CURTIS, J.—The Dominguez Estate Company, a corpo-
ration, was, on the twenty-first day of March, 1917, the
owner of a large tract of land situated in the county of Los
Angeles. On that day it executed and delivered a grant
deed to all of said real property to the Title Insurance and
Trust Company, a corporation. This deed was recorded on
the day it bore date, and on the same day the Title Insur-
ance and Trust Company executed a declaration of trust,
stating that the real property was held in trust and setting

forth the terms of said trust. This declaration of trust was not recorded. On March 20, 1920, and while said land stood of record in the name of the Title Insurance and Trust Company, the Dominguez Estate Company executed an oil and gas lease covering some 140 acres of the same land conveyed to the Title Insurance and Trust Company. This lease was executed in favor of defendant George F. Carson and was thereafter assigned and transferred to the defendant, the Carson Oil Company, and later by said company to the defendant, Joe Crail. This lease, however, was not recorded until October 26, 1921. On August 21, 1921, the Title Insurance and Trust Company executed a paper in which it ratified, or attempted to ratify, said oil and gas lease made as aforesaid by the said Dominguez Estate Company. On April 19, 1920, the Title Insurance and Trust Company executed and delivered to plaintiff a grant deed to about four acres of the 140-acre tract covered by the lease in favor of George Carson, and it was stipulated that plaintiff, at the time she acquired this conveyance, had notice of the execution and delivery of the lease by the Dominguez Estate Company to George F. Carson, dated March 20, 1920. Upon this state of facts the trial court gave judgment in plaintiff's favor, quieting her title to the land described in her complaint, being the land described in her deed, and from this judgment the defendants, George F. Carson, the Carson Oil Corporation, and Joe Crail, have appealed. The Dominguez Estate Company, although made a party defendant in said action and served with process, never appeared therein and judgment by default was entered against it.

It is appellants' contention: 1. That the trust executed by the Dominguez Estate Company to the Title Insurance and Trust Company was but a dry trust, the beneficiary and trustor, the Dominguez Estate Company, being the real owner whose conveyance binds the plaintiff who acquired her interest in said real property from the trustee with notice of the previous lease executed by the trustor and beneficiary.

2. That there was sufficient estate in the trustor and beneficiary to enable it to make a lease in favor of appellants, which lease was binding upon the plaintiff who had notice thereof.

3. That ratification by the trustee of the lease made by the trustor and beneficiary was binding upon the grantee from the trustee, such grantee having had notice of the lease.

The portions of the declaration of trust material to the decision of the questions involved herein are as follows:

"Know all men by these presents: That the Title Insurance and Trust Company, a corporation, organized under the laws of the state of California, with its principal place of business at Los Angeles, California, hereinafter called the 'Trustee,' has received a deed dated March 21st, 1917, executed by the Dominguez Estate Company, a corporation, filed for record March 21st, 1917, conveying to it that certain real property described as follows, to wit: [Then follows a description of the property.] That whereas it is understood that the consideration paid for said real property, hereinbefore described, . . . was paid by said Dominguez Estate Company, a corporation, hereinafter sometimes called the 'Beneficiary,' no part of said consideration having been paid by said Trustee hereunder. [The declaration then recites that a portion of said real property had been subdivided into five-acre lots under the mutual agreement of the trustee and the beneficiary, and was known as tract No. 3218, and that the remainder of said real property may be subdivided "in such manner as may hereafter be agreed upon by said trustee hereunder, said Beneficiary and the agent hereinafter named."]

"Now, therefore, said Title Insurance and Trust Company, Trustee, hereby certifies and declares that it holds and will hold the real property hereinbefore described . . . in trust under the terms and conditions, and for the uses and purposes set forth in this declaration, namely: [It is then provided that lots in tract No. 3218 might be sold for not less than $2,000 each, and that the balance of said tract might be sold upon such terms and conditions as said trustee might deem best, by lot or lots if subdivided, or by parcel or parcels if not subdivided, and "the sale prices thereof to be not less than those hereinafter to be agreed upon by said Trustee, said Beneficiary and said agent, to be indicated by schedule or schedules to be filed with said Trustee." The proceeds of said lots in tract No. 3218 were to be distributed by said trustee, first, to the payment of

the costs, fees and expenses of said trustee; second, the sum of $1,750 to the beneficiary; third, the balance to H. H. Cotton, the said agent. The proceeds from the sale of the balance of said real property were to be distributed by said trustee, first, to the payment of its costs, fees and expenses; second, to the said beneficiary "such sum, or sums, and at such times as may hereafter be agreed upon by said Dominguez Estate Company and H. H. Cotton"; third, the balance to the said H. H. Cotton.]

"H. H. Cotton is appointed agent of the said Trustee in making a sale of the real property covered hereby, to collect and disburse all rents (if any) thereof and to generally assume the care and custody of said real property . . .

"It is distinctly understood that all deeds, contracts of sale, and other instruments affecting the property covered hereby, or any part thereof, shall be executed solely by the said Trustee."

"The costs, fees and expenses of the said Trustee hereunder are hereby fixed as follows: [The usual fees for preparing, executing, and recording instruments and issuing guarantees showing title are to be paid to said trustee, also the sum of $250 for drawing and executing the declaration of trust; also two per cent of all moneys received and disbursed under the trust, and the sum of two dollars for each deed or contract executed by the trustee and a reasonable compensation for any services rendered and not covered by the above fees.]

"This trust shall not cease or terminate in any event until all of the costs, fees and expenses of said Trustee hereunder shall have been fully paid. The conditions and provisions hereof shall inure to and bind said Trustee, said Beneficiary, said agent, their heirs, legatees, devisees, administrators, executors, successors and assigns."

[1] The trust thus created was an express trust to sell real property and dispose of the proceeds of such sale, and was authorized by the statutes of our state. "Express trusts may be created for any of the following purposes: 1. To sell and convey real property and to hold or reinvest or apply or dispose of the proceeds in accordance with the instrument creating the trust." (Civ. Code, sec. 857.) [2] As a general rule every express trust in real property, valid as such in its creation, vests the whole estate in the

trustee subject only to the execution of the trust. The beneficiary takes no estate or interest in the property, but may enforce the performance of the trust. (Civ. Code, sec. 863.)

Certain exceptions or limitations to this general rule are made by sections 864, 865, and 866 of the Civil Code. The provisions of these sections of the Civil Code, however, have no particular bearing upon the trust under consideration in this action. [3] In our opinion this trust comes within the general rule expressed in section 863. As we have seen, by the terms of this section, the absolute title to the trust property is vested in the trustee, and the only interest the beneficiary has therein is to enforce the trust. As against the trustee and those lawfully claiming under him, the beneficiary has no interest in the property itself, but only in the proceeds thereof after the property has been sold by the trustee. This was so held by the supreme court in construing a trust similar to the one before us. In this action the court said: "It is true that plaintiff has proceeded upon the theory that Waterman (one of the beneficiaries) had, at the time of the attachment, and still has, an equitable interest in that property, and that the claim of Stanford is in the nature of a mortgage upon that equitable interest, . . . But this is a mistaken theory which has run all through the discussion of this case, and led to much confusion. The trust created in Smith (the trustee) is an express trust, under subdivision 1, of section 857, of the Civil Code. It vests in Smith the whole title, legal and equitable. (Civ. Code, sec. 863.) By the very terms of the trust, whether we read it as originally written or as revised, Waterman had no interest in the property, and could never acquire any interest, unless he purchased it, as any stranger might do. The only right that any beneficiary under the trust had or has was to share in the proceeds of the rents or profits when realized, and of the sale of the land when sold, and the only remedy that of proceedings to enforce the execution of the trust." (*Ward* v. *Waterman,* 85 Cal. 488, 506 [24 Pac. 930, 934].) [4] The beneficiary, the Dominguez Estate Company, therefore, having no interest legal or equitable in the trust property, an attempted transfer thereof by it either in the form of a deed or lease, as against the trustee or its grantee, would

not convey any interest in the trust property. On the other hand, the trustee, being vested with both the legal and equitable title, not only could convey by deed a good title to the trust property, but it is the only person clothed with such power. The parties to the trust in this proceeding did all in their power to make this clear and definite. By reference to the declaration of trust, it will be seen that the very object and purpose of the trust was to give to the trustee the sole power to convey title to the trust property. To carry out this purpose a grant deed to the property was executed and delivered by the Dominguez Estate Company to the trustee. This deed was absolute in form and was, on the date of its execution, recorded in the office of the county recorder of the county in which the property is situated. The trustee thereby became the record owner of the absolute title to the property. In the declaration of trust (which is binding upon the beneficiary and all persons claiming under the beneficiary, whether they had actual notice of it or not, for the reason that the record title was in the trustee) it was provided that all deeds, contracts of sale, and other instruments affecting the trust property should be executed solely by the trustee.

[5] A trustee has all the authority necessary to carry out the objects and purposes of the trust. This is true even though the instrument creating the trust may not directly confer upon him such power. As was said by the court in the case of *Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 587, at page 595 [40 Pac. 810; 813]: "The quantity of interest which passes to the trustee in case of an express trust is commensurate with the necessities of his office; the trustee shall have an estate in fee, if that is necessary, to enable him to perform the duties imposed upon him, although it is not in terms given to him by the instrument creating the trust; on this principle a devise of lands in trust to sell clothes the trustee with the fee, because necessary to the execution of the trust. The rule being compendiously stated that the trustee 'will take an estate adequate to the execution of the trust—no more nor less.'" (Citing Perry on Trusts, sec. 320; *Young* v. *Bradley,* 101 U. S. 787 [25 L. Ed. 1044, see, also, Rose's U. S. Notes].)

[6] The Title Insurance and Trust Company as trustee, therefore, took an estate in the trust property adequate to

the execution of the trust, and as the trust was to convey an absolute title to the lands and to distribute the proceeds of all sales thereof, it was necessary for it to own and hold the absolute title to the trust property. This was clearly provided for in the instruments executed by the parties and creating the trust. According to the trust, the trustee was to have the care and custody of the real property through H. H. Cotton, its agent; it was to sell the lots in tract No. 3218 and to distribute the proceeds of such sale according to the terms of the declaration of trust; as to the balance of said property, it was invested with the discretion of subdividing the same and selling it in lots, or without subdivision, to sell it in parcels, and at such prices as might be agreed upon by its agent, the said H. H. Cotton, and the beneficiary, and to distribute the proceeds of said sale. This amounted to far more than a simple or dry trust in the trust property. "A trust is simple, passive, or dry when the trustee has no active duty to perform, or when the trust serves no purpose, or none that would not be equally served without it, the trustee being the mere depositary of the naked title, charged with no duty and without power to take possession, or manage, or exercise any control over the property." (39 Cyc. 219.)

"On the other hand, the creator (of a trust) may, by the provisions of the instrument creating the trust, be divested of an estate or interest in the trust property. Thus where a trust deed creates a valid trust and gives a power of sale to the trustee at the request, and for the benefit of, the beneficiary under the deed, no power of revocation being reserved, no estate in the premises is left in the grantor, which is capable of being transferred." (39 Cyc. 245. See, also, *Marvin v. Smith,* 46 N. Y. 571; *Kopp v. Gunter,* 95 Cal. 63 [30 Pac. 301]; *Willhoyt v. Cunningham,* 87 Cal. 454 [25 Pac. 675].)

It follows, therefore, that the Dominguez Estate Company had no interest in the trust property which it could transfer by deed or otherwise, and that the appellants acquired no interest in said property adverse to the trustee or its grantee by the lease in favor of the appellant George F. Carson. It is true respondent took her deed with notice of this lease, but as the lease was taken subject to all of the terms of the trust, the lessee therein acquired thereby no in-

terest in the trust property as against the trustee. (Civ. Code, sec. 865.) The lessee would, of course, have no better title as against the grantee of the trustee than he had as against the trustee.

[7] As to the contention of appellant that the subsequent ratification of the lease by the trustee gave it validity as against the trustee and its grantee, we are not able to entirely agree with appellants. Conceding that such ratification was within the power of the trustee, and bound any interest of the trustee in the lands covered by the lease, yet it could affect only such interest in said lands as was held by said trustee at the time of the ratification. The fact of the case, however, is that, at the time said trustee executed the paper purporting to ratify said lease, said trustee had no interest in the property claimed by respondent, as it had conveyed the same to respondent over a year prior to the time of its attempted ratification of said lease. The act of the trustee, therefore, in this regard was but an idle act in so far as respondent's rights in said property were concerned.

In our opinion the judgment should be affirmed, and it is so ordered.

Conrey, P. J., and Houser, J., concurred.

A petition to have the cause heard in the supreme court. after judgment in the district court of appeal, was denied by the supreme court on July 20, 1925.

All the Justices present concurred, except Houser, J., *pro tem.*, who did not participate.