Filed 7/3/13  Staley v. Woodgrift CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| KERI M. STALEY, as Special Trustee, etc.,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>BEVERLY D. WOODGRIFT, as Trustee, etc.,<br><br>  Defendant and Respondent. | 2d Civil No. B240835<br>(Case No. 56-2011-0397502-<br>PR-TR-OXN)<br>(Ventura County) |

    This is a dispute between the surviving spouse and her stepdaughter over the meaning of a family trust.  The stepdaughter petitioned the trial court for instructions regarding the trust.  We modify the trial court's judgment to require the surviving spouse to allocate half of the appraised value of the personal property to the subtrust created for the benefit of the stepchildren.  We also reverse and remand for further proceedings on whether property acquired by the spouses in joint tenancy after the trust's creation is to be deemed withdrawn from the trust.  We otherwise affirm.

*FACTS AND PROCEDURAL HISTORY*

Kenneth and Beverly Woodgrift created the Woodgrift Family Trust (Trust) in May 2000.[1]  Kenneth passed away nearly 10 years later.  As the Trust required, Beverly divided up the Trust's assets into two subtrusts:  (1) a Survivor's Trust consisting of Beverly's half of the "Trust Estate"; and (2) an Exemption Trust consisting of "the balance" of the "Trust Estate."  (Art. III, §§ 1-5.)  Beverly became the Trustee of the Survivor's Trust.  Keri M. Staley, one of Kenneth's children from a prior marriage, became the Special Trustee of the Exemption Trust.  (Art. IX, § 2b.)

Keri filed a petition with the trial court seeking instructions on eight different provisions of the Trust.  The trial court declined to provide instructions on one of the issues, but resolved the remaining issues largely in Beverly's favor.

*DISCUSSION*

We independently review the trial court's interpretation of a trust and other written instruments.  (*Johnson v. Greenlesch* (2009) 47 Cal.4th 598, 604.)

I. *Keri's Authority as Special Trustee of the Exemption Trust*

The Trust provides that Beverly, as the surviving spouse, is entitled to "all of the net income" from the Survivor's Trust and the Exemption Trust.  (Art. III, § 7a.)  Beverly is also entitled to use the principal of those subtrusts' assets as she "deems necessary for [her] proper health, support, and maintenance."  (*Id.*, § 7b.)  However, "before making any principal distributions" from the Exemption Trust if assets remain in the Survivor's Trust, Beverly "must obtain the approval of the Special Trustee" of the Exemption Trust.  (*Ibid.*)  The Special Trustee of the Exemption Trust exists "solely for the purpose of approving any discretionary distributions of principal from [that Trust] for the benefit of [Beverly.]"  (Art. IX, §1b.)

Keri contends that, as Special Trustee, she is authorized and obligated to (1) confirm that the Exemption Trust was correctly funded at its creation; (2) review *all*

---

[1] We intend no disrespect, but will use the parties' first names for clarity.

2

distributions from the Exemption Trust to verify that Beverly is properly characterizing withdrawals as "interest" rather than "principal"; and (3) approve or deny the accrual of further interest as well as any further withdrawals on the reverse mortgage on the home where Beverly lives.

A. *Implied powers of the Special Trustee*

Keri argues that her role in approving Beverly's requests to use the principal of the Exemption Trust for her support makes Keri responsible for the Exemption Trust's principal. Keri asserts that she can viably discharge this responsibility only if she also has the authority to ensure proper initial funding of the Exemption Trust's principal and to verify every withdrawal from that Trust (even if Beverly deems it to be "income" under the terms of the California Revised Uniform Principal and Income Act that Beverly is obligated to follow (Art. X, § 22)). For support, Keri relies upon (1) precedent recognizing a trustee's authority "'. . . to do acts which, though not specified in the instrument, are implied in its general directions . . .'" (*Kipp v. O'Melveny* (1905) 2 Cal.App. 142, 144); and (2) statutes obligating a trustee to "administer the trust with reasonable care, skill and caution" (Prob. Code, § 16040),[2] and "to take reasonable steps . . . to take and keep control of and to preserve the trust property" (§ 16006; see also § 16200). The trial court rejected Keri's position, and limited her role to approving "invasion[s] of the principal of the Exemption Trust."

The trial court's construction is correct. "'The extent of the duties and of the powers of a trustee depends primarily upon the terms of the trust. . . .' [Citation.]" (*Crocker-Citizens Nat. Bank v. Younger* (1971) 4 Cal.3d 202, 211.) A trustee's implied powers are, by definition, limited to those "necessary to carry out the objects and purposes of the trust." (*Craven v. Dominguez Estate Co.* (1925) 72 Cal.App. 713, 719.) A trustee's statutory duties are similarly circumscribed. (§ 16200 [limiting trustee's powers to those "in the trust instrument"].)

---

[2] Unless otherwise stated, all statutory references are to the Probate Code.

3

According to the Trust, the Special Trustee of the Exemption Trust has the "sole[]" duty of "approving any discretionary distributions of principal from [the Exemption Trust] for the benefit" of the surviving spouse when that spouse seeks to use the Exemption Trust's principal while assets remain in the Survivor's Trust. (Art. IX, §1b.) This duty is to be exercised in light of the Trust's "primary objective" "to provide for the present and future health, support and maintenance" of the surviving spouse. (Art. III, § 7d.) Moreover, a Special Trustee is appointed only if the surviving spouse is acting as her own trustee. (*Id.*, § 7b.) Given this narrow function, the Special Trustee is not a trustee of the Exemption Trust for any and all purposes, and consequently has no general duty to safeguard the Exemption Trust's property. Absent such a duty, the authority Keri seeks is not implied by the Trust or by statute.

B. *Special Trustee's role regarding the reverse mortgage*

Keri further contends that her power to approve distributions of principal from the Exemption Trust includes authority over the reverse mortgage on one of the Trust's properties. At the time of Kenneth's death, Kenneth and Beverly owned a home on Quail Run Lane in Indian Wells, California (Quail Run property) valued at $2,645,000. The property is subject to a "reverse mortgage." Under this mortgage, interest not immediately paid becomes additional loan principal. The maximum "cap" of the reverse mortgage is $1,067,800; at the time of Kenneth's death, the outstanding principal balance of the reverse mortgage was $259,240. When Kenneth died, Beverly allocated half of the value of the property and half of the reverse mortgage to each subtrust.

Keri argues that she is entitled to approve the accrual of further interest on the reverse mortgage because that interest is added to the principal of the loan and thus reduces the equity in the property (and hence the principal of the Exemption Trust). Keri also argues that she is entitled to approve Beverly's withdrawal of any further funds from the reverse mortgage for the same reason. The trial court declined to address Keri's first contention, and rejected her second on the ground that Beverly could

4

allocate any further withdrawals to the Surviving Trust's half interest in the property with the caveat that Keri could later intervene "if the outstanding balance of the reverse mortgage threatens to exceed or exceeds fifty percent (50%) of the fair market value of the Quail Run Property."

The Special Trustee's authority to approve or disapprove "distributions of principal" from the Exemption Trust does not confer the right to "approve" the accrual of interest or Beverly's further withdrawals of funds against the reverse mortgage on the Quail Run property. To be sure, the continuing accrual of interest on the original $259,240 loan amount reduces the equity in the property. But such increases in the amount of the loan principal are not "distribution[s] of principal" from the Exemption Trust. The Survivor's Trust and Exemption Trust have one-half interests in the property; as long as the accruing interest on the reverse mortgage is allocated, as an accounting matter, to the Survivor's Trust's interest in the Quail Run property, the Exemption Trust's interest is not diminished.

The same logic applies to further draws on the reverse mortgage. The Trust expressly grants Beverly the power to "encumber the Trust Estate or any property therein by mortgage . . . or otherwise." (Art. X, § 12.) We agree with the trial court that further draws on the reverse mortgage, if combined with reduced property values, might create the possibility that the reverse mortgage's balance (although capped at $1,067,800) might exceed the value of the Surviving Trust's one-half interest in the Quail Run property and implicate the Special Trustee's authority to approve further withdrawals. Until such time, however, the Exemption Trust's principal is sufficiently protected if Beverly allocates, as an accounting matter, any withdrawals to the Survivor's Trust's interest and keeps Keri apprised of possible diminution of the Exemption Trust's interest in that property.

## II. *Tangible Personal Property*

The Trust states that "[t]he Survivor's Trust shall include" the surviving spouse's "interest in the Trust Estate." (Art. III, § 2.) The Trust then states: "In funding

5

the Survivor's Trust, the Trustee shall allocate to the Survivor's Trust all of the Trustors' automobiles, memberships, household furniture and furnishings, personal effects and other articles of household or personal use or ornamentation constituting part of the Trust Estate." (*Ibid.*) Focusing on the second provision, Beverly construed the language as awarding the Survivor's Trust *all* of the couple's personal property; on that basis, she kept for herself the proceeds of selling $28,000 in furniture and $85,000 for two boats. The trial court disagreed with Beverly's reading, concluding instead that (1) the Survivor's Trust and Exemption Trust are each entitled to half of the value of couple's personal property; and (2) Beverly may allocate the property itself to either subtrust. We agree with the trial court's first ruling, but not with its second.

The trial court correctly determined that the couple's personal property is to be divided equally between the Survivor's Trust and the Exemption Trust. As noted above, these subtrusts divide the "Trust Estate." The "Trust Estate" is defined to include "[a]ll property now or hereafter subject to this Trust," and specifically includes the couple's personal property. (Art. III, § 2; Preamble; Schedule A to the Trust.)

Beverly raises two objections to this reasoning. She points to the sentence allocating personal property to the Survivor's Trust. But that sentence enumerates the specific assets that are to be allocated to the Survivor's Trust, and thereby ensures that Beverly gets to keep using her household furniture and other belongings. It does not override the Trust's mandate that the value of the Trust Estate be split between the two subtrusts. Beverly also argues that allocating half of the Trust's personal property to the Exemption Trust unfairly benefits the beneficiaries of the Exemption Trust who will get half of that property now, and another half from the Survivor's Trust (for a total of 75 percent of the personal property) when Beverly dies. This argument overlooks that this alleged unfairness is avoidable because Beverly has the authority under the Trust to alter the default beneficiaries to the Survivor's Trust. (Art. XII, § 2.)

We accordingly agree with the trial court's ruling requiring an appraisal of all personal property not already valued by a prior sale. Once appraised, however,

6

assets totaling one-half of that value should be allocated to the Exemption Trust. The Trust contains no language justifying a delay in this allocation, so we disagree with the trial court's ruling that the allocation may occur following Beverly's death. Unlike the trial court, we further conclude that Beverly may not allocate any personal property to the Exemption Trust absent the consent of that Trust's beneficiaries. The Trust states that personal property "shall" be allocated to the Survivor's Trust; it leaves no discretion to allocate differently.

### III. *After-Acquired Assets Held in Joint Tenancy*

When they executed the Trust, Kenneth and Beverly also executed an Agreement to Convert Property (Agreement). In pertinent part, that Agreement provided that "[a]ll property *hereafter acquired* by [Kenneth] and [Beverly] or either of them shall be immediately and automatically converted into [their] community property." (Italics added.) Consistent with the Agreement, the Trust included in the "Trust Estate" all "bank accounts . . . now owned or *hereafter acquired*" and "[h]ousehold furniture and furnishings, personal effects and other articles of household or personal use or ornamentation . . . now owned or *hereafter acquired*." (Schedule A, italics added.)

Keri argues that three different bank accounts, two cars, and two boats held in joint tenancy were part of the Trust Estate and are to be divided between the Survivor's Trust and the Exemption Trust. The trial court ruled that those assets owned by Beverly and Kenneth at the time the Trust was executed (namely, the Bank of America checking account ending in 5272 and the Ameritrade account with a balance of $7,348) were included in the Trust Estate. It ruled that a Bank of America certificate of deposit and the other assets acquired after the Trust was executed and held in joint tenancy were outside the Trust Estate because Keri had not shown their inclusion by clear and convincing evidence, as section 5302 required.

The trial court applied section 5302, which provides that jointly held accounts pass to the surviving holder(s) unless a different arrangement is proven by

7

clear and convincing evidence.  (*Id.*, subd. (a).)  However, section 5302 does not apply to married couples like Kenneth and Beverly.  (§ 5305, subd. (a).)  Consequently, the question of whether these after-acquired assets are part of the Trust Estate turns instead on whether Kenneth and Beverly were overriding their earlier intent (expressed in the Trust and the Agreement) to include these assets in the Trust Estate by exercising their right to withdraw them from the Trust Estate.  (Art. XII, § 1.)  This hinges on whether (1) Kenneth's and Beverly's decision to place title to these assets in joint tenancy was meant to effect a withdrawal; and (2) whether this decision was executed with a "writing, signed by the person or persons having the power" to withdraw assets, as required by the Trust.  (*Id.*, § 5.)  We remand to the trial court for further proceedings on the issue of withdrawal.

### IV.  *Funeral Expenses*

The Trust specifies that when one spouse dies before the other, the deceased spouse's "last illness and funeral expenses" are to be paid "out of the Trust Estate."  (Art. III, § 6a.)  The Trust also provides that the "last illness and funeral expenses" of the second spouse are to be paid "from the Survivor's Trust."  (Art. IV, § 2a.)  Keri argues that Beverly erred in charging Kenneth's funeral expenses to the Exemption Trust because those expenses are chargeable to the "Trust Estate" (and thus half to each of the subtrusts).  Beverly responds that Kenneth's funeral expenses are to be allocated to the Exemption Trust, and hers to the Survivor's Trust.  The trial court agreed with Beverly.  So do we.

The plain language of the Trust assigning the duty to pay Kenneth's funeral expenses "out of the Trust Estate" is ambiguous on the question of how those expenses are to be allocated between the Survivor's Trust and the Exemption Trust.  We resolve this ambiguity by applying the default rule set forth in section 19326 that bars assigning the funeral expenses of the first spouse to "the community share of the surviving spouse."  (*Ibid.*)  This resolution also yields an equitable result:  The Trust explicitly instructs that Beverly's funeral expenses are to be allocated to the Survivor's

8

Trust, so requiring Kenneth's funeral expenses to be paid from the Exemption Trust means that the subtrust created for the benefit of each spouse's children will pay their respective parent's funeral expenses.

## V. *Keri's Attorney's Fees*

Keri argues that she is entitled to reimbursement for her attorney's fees under the Trust and under sections 16243 and 16247. The trial court ruled that the fees associated with this litigation were not "reasonably incurred," and did not decide the threshold question of her entitlement to reimbursement.

We conclude that Keri is not entitled to attorney's fees by virtue of her position as Special Trustee of the Exemption Trust. The Trust allows "[e]ach Trustee" to be "reimbursed for reasonable expenses incurred on behalf of this Trust." (Art. IX, § 13.) But the Trust defines "Trustee" as "the original Trustee or Trustees as well as to any successor, replacement or added person, corporation or other entity from time to time acting." (*Id.*, § 3.) Keri does not meet this definition: She is not Beverly or Kenneth, and did not incur the fees she now seeks while "acting" as their successor. Keri's reliance on statutory authority suffers from a similar defect. Sections 16243 and 16247 empower a "trustee" to hire and pay attorneys, but section 84 defines "trustee" as "an original, additional, or successor trustee." As Special Trustee of a subtrust assigned a very specific and limited duty, Keri also does not meet the statutory definition of "trustee" that would entitle her to rely on sections 16243 and 16247.

## *DISPOSITION*

We modify the judgment to require that Beverly allocate one-half of the appraised value of the personal property to the Exemption Trust. We reverse and remand for further proceedings on whether Beverly's and Kenneth's acquisition of assets in joint tenancy after the Trust's creation withdrew those assets from the Trust. Otherwise, we affirm the judgment.

The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


HOFFSTADT, J.[*]


We concur:



GILBERT, P. J.



YEGAN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Glen Reiser, Judge

Superior Court County of Ventura

_____


               Law Offices of Gregory M. Hultgren and Gregory M. Hultgren; Benton, Orr, Duval & Buckingham and Thomas E. Olson for Plaintiff and Appellant.

               Law Offices of David A. Esquibias, David A. Esquibias and Tracy H. Kitzman for Defendant and Respondent.